THE STATE *ex rel.* LACLEDE GASLIGHT COMPANY v. MURPHY, *Street Commissioner.*

In Banc, July 2, 1895.

1. **Constitution:** LEGISLATURE: POLICE POWER. The legislature can not bargain away the police power of the state.

2. **City:** GAS: ELECTRICITY: CORPORATE CHARTER. Whether the language of its charter, granted March 2, 1857, conferring on the Laclede Gaslight Company the right to use the streets of the city of St. Louis for the transmission of gas or "any other substance or material that may now or hereafter be used as a substitute therefor" includes electricity, not decided.

3. ———: ———: ———: REGULATION OF USE OF STREETS. A grant by the legislature to a corporation of the right to use the streets of a city for illumination by electricity is subject to reasonable regulations as to its use, and, the power to regulate the use of its streets and general police power having been subsequently conferred on the city, such right must be exercised subject to the ordinances of the city relating to electric wires in its streets.

4. ———: ———: ———: ———. Such city, under its power to regulate the use of streets, and under its general police power, has the right to require a compliance with its regulations which either wholly prohibit the illuminating corporation from placing its wires under the streets, or which regulate the manner of doing so.

State ex rel. v. Murphy.

5. ———: ———: ———: ———.  Where the lighting cities by electricity was unknown when the authority delegated to a city to regulate the use of its streets was conferred by the legislature, the latter will not be held to have intended to grant rights and powers inconsistent with the ordinary use of such streets.

6. Corporation: LEGISLATIVE GRANT, CONSTRUCTION OF.  Grants to corporations, public or private, carry only such rights and powers as are clearly comprehended within the words of the conferring act, or are derived therefrom by necessary implication, regard being had to the object of the grant.  Any ambiguity or doubt arising from the language used by the legislature must be resolved in favor of the public.  (*Carroll v. Campbell*, 108 Mo. 559.)

## *Mandamus.*

PEREMPTORY WRIT DENIED.

*Henry Hitchcock, G. A. Finkelnburg* and *I. H. Lionberger* for relator.

(1)  The act of March 28, 1868, on its face is not an act reviving or reenacting anything.  It is *prima facie* valid.  *Railroad v. Shambaugh*, 106 Mo. 568.  The validity of that act has been repeatedly recognized by this court in its former decisions.  *City v. Gaslight Co.*, 70 Mo. 69; *Gaslight Co. v. City*, 86 Mo. 495; *State, etc., v. Gaslight Co.*, 102 Mo. 472.  (2)  The charter of relator did not expire on March 2, 1887, as claimed by respondent.  (3)  The state having invested relator with the right to light the city of St. Louis, and to make and vend gaslights and other lights, including electric lights, and to that end, to lay down "all pipes, fixtures, or other things properly required," then the city of St. Louis can not, by any ordinances or requirements on its part, annul or destroy those franchises, nor can it impair or abridge them, nor can it impose substantial burdens and conditions upon their exercise, not imposed by the state itself.  The Laclede company accepted the charter as

offered by the state, and it did so at a time when it was a doubtful venture to enter into competition with an established rival, namely, the St. Louis Gaslight Company. That a large investment of money and property has since been made in good faith on the strength of the Laclede charter is admitted; hence, relator, its stockholders, and all those who have invested in relator's securities, have vested rights which can not be substantially abridged or disturbed by the state itself, much less by the municipal authorities of the city of St. Louis. *State ex rel. v. Laclede Gaslight Co.*, 102 Mo. 472; *State ex rel. v. Greer*, 78 Mo. 188; *Sloan v. Railroad*, 61 Mo. 24; *Scotland Co. v. Railroad*, 65 Mo. 123; *Weston v. City*, 2 Pet. 449; *Dartmouth College Case*, 4 Wheat. 518; *Louisville Gas Co. v. Citizens Gas Co.*, 115 U. S. 683; *Gas Co. v. Louisiana Light Co.*, 115 U. S. 650. (4) Nor can the ordinance in question be upheld as a mere police regulation, for its provisions reach far beyond the province of such regulations. "Police regulations," says the supreme court of Missouri, adopting the language of Judge Cooley, "must have some reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges, which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter, or curtailment of the corporate franchise." *State ex rel. v. Greer*, 78 Mo. 188; *State ex rel. v. Laclede Gaslight Co.*, 102 Mo. 472; *Gas Co. v. Light Co.*, 115 U. S. 650; *Louisville Gas Co. v. Citizens Gas Co.*, 115 U. S. 683. (5) The grant of corporate power to use, for any given purpose, a designated substance or material, or "any substance or material that may be used as a substitute for" the one so designated, necessarily

implies and includes the right to use such substance or material under whatever conditions, and in whatever manner, may be necessary to accomplish that purpose. *A fortiori*, such a grant includes the right of making such "substance or material" available for that purpose by subjecting it to conditions appropriate to the particular case,—whether, for example, by setting fire to illuminating gas, or by applying to such substance or material the expansive power of steam, or the propelling power of gravity, or that mysterious *vis viva*, called muscular power, created by an effort of the human will, or by transmitting what is called electricity through copper wires. But in either case, the substance or material is one thing, and the conditions under which it is used, or the force which may be applied to it for the given purpose, something entirely distinct therefrom; and the corporate power and right to use the former has nothing in the world to do with the nature of the latter, however interesting to physicists that inquiry might be.

*W. C. Marshall* for respondent.

(1) The act of March 26, 1868, is in conflict with paragraph 2, section 1, of constitution of 1865 and also with section 25, article 4, of said constitution. The particular claim made by respondent is, that the act of March 26, 1868, is an act reviving, renewing and re-enacting the act of March 2, 1857, and that it violates this provision of the constitution of 1865, in that it refers to "all the rights, privileges and franchises granted to it by the fifth section of the act to which this act is amendatory," which language is absolutely unintelligible without reference to section 5 of the act of 1857, and reading into the act of 1868, the provisions of the act of 1857, which conferred such rights, privi-

leges and franchises; and that it strikes out from the fifth section of the act of 1857, the words "during the continuance of this act," and substitutes therefor the word "forever;" and in that the act of 1868 attempts to repeal section 6 of the act of 1857, by simply employing the following language: "And the sixth section of said act, to which this act is amendatory, is hereby repealed." The act of 1868 can not be construed as an amendment by implication but as an attempt to amend the act of 1857 without publishing in full even the section amended. (2) Relator's charter by the terms of section 9 of the act of 1857 expired on March 2, 1887, and hence relator is not entitled to any of the privileges, rights and franchises claimed for it. (3) Article 2, chapter 15, Revised Ordinances, 1857, of city of St. Louis, as amended by ordinance number 16894, is a valid regulation of the streets of the city and is binding on relator. *People ex rel. v. Squire*, 145 U. S. 175; s. c., 14 Daly, 154; s. c., 107 N. Y. 593. (4) It is not true, as claimed by relator, that it is a matter of common knowledge that gas and electricity are, because produced by the operation of heat on carbon, therefore the same thing either in cause or effect. (5) On the second day of March, 1857, lighting by electricity was wholly unknown to art, and the legislature by act of said March 2, 1857, did not, and did not intend to, confer upon relator the right to manufacture and vend electricity for lighting purposes.

MACFARLANE, J.—On the petition of relator an alternative writ of *mandamus* was issued by this court, directed to respondent Murphy as street commissioner of the city of St. Louis commanding him to show cause why he should not be required to issue a permit to relator to make an excavation along the east side of Broadway as near the curb as practicable, and extend-

ing from Mound street to Olive street in the city of St. Louis, in so far as such excavation should be necessary for the purpose of laying relator's electric wires under ground.

By its petition relator represents that it is a corporation created under an act of the legislature of the state, approved March 2, 1857, and a supplementary and amendatory act approved March 3, 1857, and an amendatory act approved March 26, 1868.   These acts are set out in full in the petition.   The first, approved March 2, 1857, is entitled "An Act to incorporate 'The Laclede Gaslight Company.' "·  Laws 1856–7, p. 598.

The first section of the act creates James M. Hughes and seven others a body politic and corporate by the style of "The Laclede Gaslight Company," and by that name they and their successors and assigns are given perpetual succession, etc.

The second section fixed the capital stock at $50,000 and authorized it to be increased to $2,000,000.

The third section directs that the affairs of the company shall be managed by a board of not less than five directors, etc.

The fourth section authorizes books of subscription for the capital stock to be opened in St. Louis and upon the sum of $50,000 being subscribed provides that the company may organize under this charter.

Section 5 provides that said company, its successors and assigns should, within the corporate limits of said city, not embraced within the limits as established by act of 1839, "have and enjoy, during the continuance of this act, the sole and exclusive privilege and right of lighting the same, and of making and vending gas, gaslights, gas fixtures, and of any substance or material that may be now or hereafter used as a substitute therefor; and to that end, may establish and lay down, in said portion of said corporate limits, all

pipes, fixtures, or other thing properly required, in order to do the same (the same to be done with as much dispatch and as little inconvenience to the public as possible), and shall also have all other powers necessary to execute and carry out the privileges and powers hereby granted to said company.

Section 6 authorizes the city of St. Louis and the company to make any contracts that they may deem to their mutual advantage in regard to the lighting of any parts of said portion of said corporate limits, or any other thing relating to the business and affairs of said company. It provides that, "the said city shall have the right at the expiration of twenty years from the time of the organization of said company, under this charter, to purchase all the property and effects of the same, paying therefor to the same the value of such property and effects, with twenty per cent added thereto;" and the manner of ascertaining the value by appraisers is provided. Said section has this further provision: "If said city fail so to purchase said property and effects, then this charter shall be, and the same is hereby, renewed and extended for the further period of thirty years after the expiration thereof."

Section 7 punishes any person or body corporate who interferes with the privileges granted to said company or exercises like acts or privileges, by a forfeit and fine to said company of $1,000 for every such offense, and makes each day's continuance of such offense a new offense.

Section 8 exempts the company from the operation of of sections 6, 7, 13, 14, 15, 18 and 20 of article 1, of "an act concerning corporations," approved November 23, 1855. The sections of the act of November 23, 1855, here referred to, are contained in chapter 34, Revised Statutes, 1855, pp. 371 to 374.

Section 9 is as follows: "This act shall take effect

from its passage, and shall continue in force for thirty years."

The act of March 3, 1857 (Laws 1857, p. 599), is as follows:

"An act supplementary and amendatory of an act entitled, 'An Act to incorporate the Laclede Gaslight Company.'

"Be it enacted by the General Assembly of the state of Missouri as follows:

"Sec. 1. The act to which this act is amendatory is hereby amended as that the words 'sole and exclusive' in the fifth section of the act are stricken out.

"Sec. 2. The city of St. Louis shall not be compelled in any purchase which it may make under the sixth section of the before recited act, to pay more than the appraised value of the property and effects of the corporation created by said act, without any addition of percentage.

"This act to take effect and be in force from and after its passage."

The act of March 26, 1868 (Laws 1868, p. 187), is entitled, "An act to amend an act to incorporate the Laclede Gaslight Company, approved March 2, 1857," and is as follows:

"Section 1. The said Laclede Gaslight Company shall and may, within the corporate limits of the city of St. Louis, as the same are now or may hereafter be established, exercise, have, hold, and enjoy forever all the rights, privileges, and franchises granted to it by the fifth section of the act to which this act is amendatory, and may, at any time, lease, sell or dispose of any portion of said rights, privileges and franchises to individuals, associations, or corporations, intending or desiring to exercise the same within any portion of the limits aforesaid.

"Sec. 2.   The capital stock of said company may be increased from time to time, to such amount as may be necessary to carry on its business.

"Sec. 3.   Nothing in this act contained shall be construed as affecting the vested rights of the St. Louis gaslight company; and the sixth section of the said act to which this act is amendatory is hereby repealed.

"Sec. 4.   An act entitled an act supplementary to and amendatory of an act entitled an act to incorporate the Laclede gaslight company, approved March 3, 1857, is hereby repealed.

"Sec. 5.   This act shall take effect from its passage."

Relator represents further that under the charter rights granted by these general acts it is, and, for a long time, has been, engaged in the lighting business, both by gas and electricity; that under a contract with the city of St. Louis it is lighting a part of its public streets by electricity; that it is furnishing light by means of gas or electricity to many thousand private consumers in said city, being a large part of the inhabitants thereof; that in order to fulfill its obligations to the city and the public under its charter it has erected and maintains expensive and costly plants for the manufacture and distribution of gas as well as for generating and distributing electric currents; that for distributing gas it has from time to time constructed and maintained and now maintains a system of pipes laid under ground along the streets of the city of St. Louis, as it was at all times authorized to do by its said charter, nor has the city of St. Louis ever objected to its so doing or disputed relator's right to do so; that for the distribution of electricity relator has hitherto used overhead wires strung upon poles along the streets and alleys of said city, which poles and electric wires have been and are maintained and used by relator without objection

by said city or the authorities thereof for the distribution of electricity, as well to furnish light to private consumers as for the fulfillment by relator of its said contract with said city of St. Louis for the lighting by electricity of certain public streets and alleys thereof; that to effect such a distribution it is necessary to transmit through and by means of said wires electric currents of great power, which if and when accidentally diverted are dangerous to human life and property; that in order to avoid the increasing inconvenience and danger to the public necessarily incident to that method of distributing electric currents and in order to provide more 'effective and proper service, relator has made arrangements to lay its wires under ground along and under the streets of said city according to approved and practicable plans, and is now ready to do so with as much dispatch and as little inconvenience to the public as possible.

Relator states further that respondent was street commissioner of said city, and under its charter and ordinances had supervision and control of its streets and the enforcement of ordinances relating thereto. That after notice to said commissioner of its intentions to do so, on the thirtieth day of October, 1894, the relator commenced excavating on said streets for the purpose of laying its electric wires under ground, but was prevented from so doing by respondent acting in his capacity as street commissioner. That thereupon relator applied to respondent for a permit to make such excavation for such purposes, which was denied him.

Respondent made return to said writ and by affirmative averments put in issue the rights claimed by relator, and set up the provisions of certain city ordinances regulating the use of electric wires on the streets of the city, and averred a noncompliance with the requirements of such ordinances. By demurrer to parts

of the return and motion to strike out other parts the following issues of law were fairly framed:

*First.* Is the act of March 6, 1868, unconstitutional as being in conflict with section 2, article 8, of the constitution of Missouri of 1865?

*Second.* Is said act void as being in conflict with section 25 of article 4 of said constitution?

*Third.* Did the charter of relator expire by limitation at the end of thirty years from the date of the act of March 2, 1857?

*Fourth.* Do the powers granted relator include the right to manufacture, sell or distribute electricity for lighting purposes?

*Fifth.* Has relator the right, under its charter, to place its wires under ground without the assent of the municipal authorities and without compliance with the requirements of the valid ordinances of the city?

I.   The object to be accomplished by the writ is to require Murphy, as street commissioner of the city of St. Louis, to issue to relator a permit to make such excavations on one of the public streets of the city as may be necessary for the purpose of laying its electric wires under ground. The constitutionality of the acts under which relator claims corporate existence, is put in issue by the answer of respondent and demurrer thereto. Respondent also charges that though the acts of incorporation were valid, in the first instance, the life of the incorporation itself has expired by limitation of its existence as fixed by the charter and general laws of the state.

The city is not made a party to this proceeding, and we do not deem it necessary in this case to pass upon any questions that do not directly concern the duties of the street commissioner. We will not, therefore, consider, or express, an opinion upon any question involving the right of relator to exercise the rights, or

enjoy the franchises which appear to have been granted under the acts of the general assembly mentioned in the statement.

For the purpose of discussing the other questions involved we will then assume, without deciding, or intimating an opinion, that relator is an existing corporation possessing all the powers, rights and privileges its charter purports to confer upon it.

It is insisted by relator that under its charter it acquired from the state a vested right to the use of the streets of the city of St. Louis under which to lay its pipes for the transmission of gas or any other "substance or material" that might thereafter be adopted for illuminating purposes, and that such right was beyond the control of the municipal authorities; that electricity is a substance and material within the meaning of the charter and therefore it has a vested right to lay its wires beneath the surface of the streets for the purpose of conducting electricity through the city for illuminating purposes, and that this right can not be interfered with unreasonably by the city.

With the views we take of this question we do not think it necessary to inquire whether the right to use electricity for making light was included under the terms "substance or material" as used in the charter. It appears that relator has, for a number of years, under contracts with the city, been lighting its streets by electricity conducted by wires strung above the surface of the streets, and other questions besides the abstract right to do so would be involved in such inquiry. We will, therefore, confine our inquiry to the question whether relator has a vested right to place its electric wires under the surface of the streets without the assent of the municipal authorities thereof and without compliance with valid ordinances of the city.

Generally speaking, it is true, the legislature has

supreme control of the streets of cities. It is also true that it may, and generally does, delegate to municipal corporations such measure thereof as it deems best. The control thus delegated may be exercised by the municipal authorities.

Subsequent to the act of 1868, under authority of the constitution of 1875, the city of St. Louis adopted a charter whereby the state delegated to it the power to regulate the use of its streets, and the power to pass all ordinances, not inconsistent with the provisions of the charter, or the laws of the state, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures.

In pursuance of these powers the city enacted certain ordinances regulating and restricting the use of electric wires in the city and requiring the assent of the board of public improvement in respect to the manner in which electric wires, tubes and cables, should be secured or supported and insulated. It is charged in the return and admitted by the demurrer that the relator had never complied with the requirement of this ordinance. Relator insists that the provisions of the ordinance can not apply to rights secured to it by the state long prior to the date of the charter.

It is the well settled present policy of the law of this state to delegate to municipal corporations not only general police powers, but the control of their streets in respect to the use thereof for public purposes other than that of ordinary travel by pedestrians and private vehicles. Thus the constitution prohibits the legislature from granting the right to construct and operate street railways within any town or village without first acquiring the consent of the local authorities having control of the streets. Sec. 20, art. 12, constitution of Missouri.

State ex rel. v. Murphy.

Again, the statute requires telegraph and telephone companies to obtain the consent of the city, through its municipal authorities, before they can exercise the right to lay their wires and other fixtures under ground in any of its streets.  R. S. 1889, sec. 2721.

Electric wires when charged are recognized as being dangerous to life and property and their use is, therefore, subject to police regulations.  *W. U. Telegraph Co. v. Philadelphia*, 21 Am. & Eng. Corp. Cas., 40, and note; Dillon on Municipal Corporations [4 Ed.], sec. 698.

The state can not limit its exercise of the police power by contract or in any other way.  It was said by Chief Justice WAITE:  "All agree that the legislature can not bargain away the police power of the state. Irrevocable grants of property and franchises may be made if they do not impair the supreme authority to make laws for the right government of the state; but no legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police."  *Stone v. Mississippi*, 101 U. S. 817; see *Boyd v. Alabama*, 94 U. S. 645; *Metropolitan Board v. Barrie*, 34 N. Y. 657; *Railroad v. Mayor of Balt.*, 77 Md. 381.

Dillon says:  "The citizen owns his property absolutely, it is true; it can not be taken from him for any private use whatever without his consent, nor can it be taken for any public use without compensation; still he owns it subject to this restriction, namely, that it must be so used as not unreasonably to injure others, and that the sovereign authority may, by police regulations, so direct the use of it that it shall not prove pernicious to his neighbors or the citizens generally."  Dillon on Municipal Corporations [4 Ed.], sec. 141, p. 212.

The grant by the state to relator, though construed to include the right to use electricity for illu-

minating purposes in respect to such right was taken subject to reasonable regulations as to its use, and the power to regulate has been delegated to the city of St. Louis. Under its general police power the city has the right to require compliance with reasonable regulations as a condition to using its streets by electric wires.

II.    But this is not the only reason why the city should not, under its special power to regulate the use of its streets, and under its general police power, have the right to supervise and regulate the manner in which the electric wires of relator and all others should be placed and used in the public streets.

The art of producing light by electricity was wholly unknown to science at the time the franchise was granted to relator. The legislature, having no knowledge of the use that would be made of streets in applying new discoveries in producing light, could not have intended to grant rights and powers inconsistent with their ordinary use. It would be most unwarrantable to imply, not only that relator had the right under the general words used in the act of incorporation to use electricity for lighting purposes but that it also had the right to adopt its own methods for exercising that power, regardless of the paramount rights of the public to the use of the streets.

The power delegated to the city to regulate the use of its streets existed before the art of lighting by electricity was known, or at least before relator adopted it, and the art should be exercised, if at all, under the powers thus in force when it was brought into use.

The following declaration of law was quoted approvingly in *Carroll v. Campbell*, 108 Mo. 559: "It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the

words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public." *Fanning v. Gregoire*, 16 How. 534.

There seems to me much stronger reasons for applying this rule to the manner in which a right conferred shall be exercised when more than one method is open, and when the rights and safety of the public are more or less affected by either. In such case where the public streets of a city, which are under municipal control, are to be used, it seems too plain for argument that the city should have the right to direct the manner in which the use should be exercised.

Again, it is a matter of common knowledge that electricity is used for the purposes of transmitting sound by telephone, for transmitting messages by telegraph, for generating light, and for producing power. These uses are regarded as public and have become necessary to the business and convenience of the country, and particularly that transacted in large cities. Overhead electric wires in some streets are numerous. These contribute very materially to public convenience and private business, but when not properly supervised and regulated endanger the lives and property of the public. If used, as they generally are, in the public streets, public safety requires that they should be under police regulation and municipal control.

It is a matter also of public notoriety that the question is now being considered whether it would not be necessary, in the interest of public safety, as well as convenience, that these wires should be placed under ground so as thereby to leave the streets safe and unobstructed.

As a police regulation we have **no** doubt the muni-

cipal authorities would have a right to require this to be done in case no vested rights were infringed. Many corporations and companies doubtless now use electric wires for the various purposes above mentioned. It can not be said, not having the various charters before us, that one of these possesses rights superior to those of any others. To accommodate them all, to prevent monopolies, and to regulate the use of the streets it seems absolutely necessary that the municipal authorities should have the right to direct the manner in which wire shall be placed under ground. Without such regulation, relator, or any other corporation using electric wires, could place them under ground in such a manner as to practically exclude all others. Moreover, relator, as one of its important franchises, asserts the power to sell, lease, or dispose of any portion of said rights, privileges and franchises to individuals, associations or corporations, intending or desiring to exercise the same within any portion of the limits named. Thus under its charter, allowing the rights herein claimed, it could practically control the use of the streets in respect to laying electric wires under ground, and exclude the city from one of the most important of its municipal powers. The legislature could never have contemplated such a result.

By giving the city the right to regulate the laying of electric wires under ground, relator is deprived of no vested right. If its charter gives it the right to use electricity for lighting purposes it can do so, as we understand from the petition it has been doing, in the method now in use in said city. If the city should determine that public safety requires these wires to be placed underground, and provides the manner in which it shall be done, and relator believes its rights are thereby infringed, it will then be time enough to complain.

Och v. M., K. & T. R'y Co.

As the case is now presented, we must hold that the city, under its power to regulate the use of streets, and under its general police power, has the right to require a compliance with regulations which either wholly prohibit relator from laying its wires under the streets or which regulate the manner in which it may be done.

Respondent, under his official duties as street commissioner, properly refused to grant the permit demanded, unless relator first complied with the requirements of the valid ordinances then in force.

Peremptory writ denied. All the judges concur.