CITY OF WESTPORT, Appellant, v. JOHN W. MUL-
HOLLAND, Respondent.

84  319|
s159s 86|

Kansas City Court of Appeals, December 14, 1896.*

Municipal Corporations: RAILROADS: VESTED RIGHTS: REGU-
LATION: DIGGING IN STREETS. A company secured a franchise
from the county court, to lay and operate a railroad on a highway. A
city extended its limits and took in the highway. Held: The railway
company retained all its vested rights to operate and do the nec-
essary digging in the highway, but such rights were subject to
reasonable municipal regulations, and a railway employee would be
amenable to the city for digging in the highway without com-
pliance with such regulations. Adhered to on motion for rehear-
ing.

Appeal from the Jackson Criminal Court.—*Hon. John W.
Wofford*, Judge.

REVERSED AND REMANDED.

*Albert Marley* for appellant.

*Karnes, Holmes & Kraulhoff* for respondent.

All briefs are in the Supreme Court.

ELLISON, J.—The defendant was convicted before a
police judge of the violation of an ordinance of the city of
Westport. On appeal to the criminal court, he was dis-

*The copy of this case seems to have been lost in transmission, and first reached the
reporter July 14, 1900 without briefs. But see State ex rel. v. Smith, 141 Mo. 1.

·charged and the city appeals. The following is an agreed statements of facts, and as it presents a full statement of the case and the points involved, we insert it here:

"1. In 1887 the county court of Jackson county, Missouri, duly granted its assent to the Grand Avenue Railway Company, its successors and assigns, a railroad corporation, for the construction and maintenance of its railroad on the then road known as Rosedale avenue, near the Missouri and Kansas state line, and that immediately thereafter said Grand Avenue Railway Company constructed its railroad on said Rosedale avenue and has ever since operated the same thereon.

"2. That afterwards, to wit: April, 1891, the said city of Westport extended its corporate limits toward the Missouri and Kansas state lines so that thereafter said part of Rosedale avenue, upon which said railroad was constructed, was and is in the corporate limits of the said city of Westport.

"3. On the twenty-fifth day of November, 1891, the defendant in this case was a servant in the employ of said Grand Avenue Railway Company, and as such servant was then and there engaged in digging and tearing up said Rosedale avenue in reconstructing a switch therein near said Darragh avenue, for the purpose of switching the cars operated upon said road, said Darragh avenue being substantially the western terminus of said railroad and said switch being necessary for the operation of said railroad.

"4. That neither said Grand Avenue Railway Company, nor said defendant had any other authority for doing the work as aforesaid except the said assent of said county court of Jackson county, Missouri, granted and made of record as aforesaid, and that no other additional authority for so doing was obtained from the board of aldermen of the city of Westport, or from any other person or persons.

Westport v. Mulholland.

"5. That on said twenty-fifth day of November, 1891, there was in force in said city of Westport an ordinance, a certified copy of which is hereto attached and made part hereof.

"6. It is further agreed by and between the parties to this cause that the other cases, five in number, now pending in this court, in which the said city of Westport is plaintiff, and employees of said railway company are defendants, shall abide the determination of the issues of this case, and the same judgment shall be rendered therein as may be finally rendered in this cause."

The ordinance referred to made unlawful and prescribed a penalty for tearing up, digging, ditching, or otherwise interfering with a street, without first obtaining permission of the board of aldermen.

There is no doubt of the power of the city to enact the ordinance and the only question relates to its applicability to defendant, or the street railway company. We do not understand it to be denied that when the city limits of Westport were extended over the territory which embraced the street railway, it brought such railway under the jurisdiction of the city and subjected it to municipal regulation as effectively as if it had been originally built in the city limits. The municipal power, as it may affect the company is the same without regard to whether it was originally within the limits of the city. The city can not, in either case, interfere with the vested legal rights of the company. For instance, it would not be disputed that the growing limits of a city would bring under the city's police power and regulation the different railways entering such city; for example, the regulation of the speed of its trains and the like.

The city of Westport received the street railway into its corporate limits with all the rights and privileges which it obtained from the county court of Jackson county, in

VOL. 84 app—21

granting it the right to construct the road and operate cars thereon. Hickman v. City of Kansas, 120 Mo. 126. But exemption from the future police control and regulation by a city which might absorb the territory over which the road should be constructed was not one of those rights. When the road was embraced in the territory of the city by an extension of limits, it became, so to speak, a citizen of the city and subject, like others, to the control and regulation of the city government. Prior to the extension of the city limits, the street railway company may have had the right under its license from the county court to dig into and tear up Rosedale avenue, without notice to or asking the permission of anyone—certainly not of the Westport council. But it held its property subject to the future contingency of finding itself in the midst of a city requiring regulations for the convenience, comfort and safety of an increased population. It may "be observed that every citizen holds his property subject to the proper exercise of this (police) power, either by the state legislature directly, or by public or municipal corporations, to which the legislature may delegate it." Dillon on Mun. Corp., sec. 141.

Grant that before the extension the company had as much right to dig into and tear up the street as a citizen has to build a frame house anywhere on his land which is outside of a city, yet, in the latter case, if the citizen's land becomes a part of a city by the extension of the limits, his right may become extinct by the extension of the fire limits. If it be said that the latter is a power which may be exercised for the safety of the lives and property of the inhabitants, the same answer could be given to an objection to the ordinance under which defendant is charged. Digging and tearing up of a street, unless guarded against, will not only impede travel and destroy property, but will imperil the life and limb of those who use it. It is certainly a reasonable requirement and one which may well attract the attention of the authori-

ties, that before a street in a city is disturbed by digging and tearing up for any purpose, there should be some authoritative permission given. The permission may be coupled with reasonable conditions and safety provisions; or, it may be accompanied by action on the part of the authorities preventive of accident. A moment's consideration will show where the result of full liberty over a street, for the reconstruction of a railway, would lead, not alone the danger which would follow, but the city, according to well-settled law, would be liable for damages resulting to persons injured by the disturbed condition of the street.

If it be conceded, as it certainly must, that the city might legally enact an ordinance requiring, as a condition to such interference with the street, that safeguards should be provided by day and by night, it is a concession of all that is necessary to the power to enforce the present ordinance. For it is only another mode of providing for the safety and welfare of persons using the street. In getting permission from the city council, we must assume precautionary conditions would be prescribed, or reasonable preventives provided.

It by no means follows that since permission must be asked that it may be arbitrarily refused. Permission could not be refused for any purpose or act which the company have a right to perform. The ordinance does not attempt to take from the company any right; on the contrary its words and enactment are an assumption that digging into and tearing up the streets will, at times, be necessary in the exercise of the rights of the citizen. And it only demands that when the right is exercised, the city must be consulted for the reasons aforesaid. If permission should be arbitrarily withheld, without good cause, I see no reason why it could not be forced in the proper tribunal.

That the county court, or the city itself, could not surrender to the company the police power of control and regu-

lation of its acts, or the exercise of its rights, is well settled —so well, that we need not stop to cite or quote authority further than to say that the following is the syllabus to an interesting and instructive case on the subject, which was determined by the supreme court:

"Regulation of use of Streets.—A grant by the legislature to a corporation of the right to use the streets of a city for illumination by electricity is subject to reasonable regulations as to its use, and, the power to regulate the use of its streets and general police power having been subsequently conferred on the city, such right must be exercised subject to the ordinances of the city relating to electric wires in its streets." State ex rel. v. Murphy, 130 Mo. 10.

On the subject generally an elaborate discussion is found in Railway v. Baltimore, 77 Md. 352, referred to in the case just cited.

We are of the opinion that the defendant should have been convicted and we will reverse the judgment and remand the cause that such judgment may be entered and such punishment fixed as may be determined by the trial court. All concur.

### ON MOTION FOR REHEARING.

We have been asked to grant a rehearing in this cause. In view of the evident earnestness of counsel, as disclosed by the motion, we have again examined the question presented. That examination has resulted in the conclusion that defendant's objections to the views set forth in the foregoing opinion are unsupported by authority. Here is an ordinance which requires that before anyone shall tear up or dig into the streets of the plaintiff city, permission must be obtained for that purpose. This precautionary provision as applied to the streets of a city, is so evidently appropriate that it ought not to require more than its statement.

Nor is there anything of substance in the objection that

the ordinance can not be applied to defendant for the reason that it built its track on the street in question before the street became a part of plaintiff city by the extension of its limits. The case of Stuyvesant v. Mayor of New York, 7 Cow. 603, was where the defendant was prosecuted under an ordinance of the city of New York, then recently passed, prohibiting the burying of dead bodies in a part of the city in which Trinity churchyard was situated. The burial having been in Trinity churchyard, the defense was that under a grant from the King of Great Britain to the church corporation such yard was for burial purposes and had been so used for more than a century; and that the defendant was the sexton in the employment of said church and did the act under its direction. In holding the defendant amenable to the ordinance, the court said: "Nor can it make any difference that the right is purchased previous to the passage of the by-law, or before it becomes necessary. * * * Every right, from an absolute ownership in property down to a mere easement, is purchased and holden subject to the restriction, that it shall be so exercised as not to injure others. Though, at the time, it be remote and inoffensive, the purchaser is bound to know, at his peril, that it may become otherwise by the residence of many people in its vicinity; and that it must yield to by-laws, or other regular remedies, for the suppression of nuisances."

In the case of the Telegraph Co. v. Hess, 125 N. Y. 641, the plaintiff, a telegraph corporation, constructed its line by poles and wire, in the streets of New York city, under a legislative grant authorizing such construction by the erection of "necessary fixtures, including posts," etc., in the streets and highways. After the construction, under such authority, the legislature provided for subways for electrical conductors in certain streets, and after notice to the corporation to remove its wires and poles as provided in the act last mentioned, and its refusal to do so, it was held that the com-

missioner of public works could not be restrained from cutting down the poles and removing the wires.   In the course of the opinion in that case the court said:

"The right of the plaintiff to maintain and operate its wires in the streets could certainly be no greater than the right of railroads which by public authority occupy the streets and highways of the state.   The state in the exercise of its police power, and the regulating control which it has over corporations created by its authority, may exercise a general supervision over such corporations.   It may prescribe the location of the tracks, the size and character of the rails, the precautions which shall be taken for the protection of the public, and the character and style of highway crossings; and no one has ever questioned that it may do whatever is necessary and proper for the public welfare in the control and regulation of the franchises which such corporations have obtained by statutory authority."

It was held in Salem v. Maynes, 123 Mass. 372, that a city ordinance prohibiting the erection of wooden buildings within a certain distance of another wooden building could be enforced against one who had made his contract for, and had begun the erection of a building within the prohibited distance before the ordinance was passed.   The court said: "All contracts between individuals, and even charters granted by the state, are subject to the exercise of this power."   And the same doctrine was announced in a later case by the supreme court of Tennessee.   Knoxville v. Bird, 12. Lea 121.

In Ex parte Fiske, 72 California, 125, there was an ordinance of the city of San Francisco prohibiting the alteration or repair of any wooden building without written permission of the fire wardens, approved by the committee on fire department and the mayor.   Fiske, having violated the ordinance, was prosecuted and fined $250, and in default of payment sent to jail.   The court held the ordinance valid

notwithstanding the inconvenience to individuals in many instances.　The court said that it was not to be presumed that the officers named in the ordinances would exercise their powers or discretion wantonly or oppressively.

The Supreme Court of the United States had a question of enough similarity to the one before us to make a reference thereto appropriate, at least, by way of illustration. Fertilizing Co. v. Hyde Park, 97 U. S. 659.　There the state of Illinois incorporated a fertilizing company in 1867, and authorized it to locate fertilizing works and manufacture fertilizers within certain territory near Chicago; and for that purpose to convey the bodies of dead animals, offal, etc., to the place selected.　When the works were constructed and the business was being carried on, the surrounding grounds were low, swampy and practically uninhabited.　Afterwards the village of Hyde Park grew up around or about the works and in 1872 the council of the village passed an ordinance prohibiting any one from hauling or transporting the bodies of dead animals, or other offensive matter, through the streets of the village.　In 1873 the authorities of the village caused to be arrested and prosecuted an engineer and other employees of a railroad company which was transporting such offensive matter.　They were convicted and the fertilizing company sought to restrain further prosecutions; but the Supreme Court of Illinois and, on appeal, the Supreme Court of the United States, held the ordinance valid.

It will be seen by the foregoing authorities, in connection with State ex rel. v. Murphy, 130 Mo. 10, that the act of the plaintiff city in enforcing the ordinance in question against the employees of the street railway company was a proper and legitimate exercise of a power it clearly possessed.

The motion will be overruled.　The other judges concur.