The Webb City and Carterville Waterworks Company, Respondent, v. The City of Webb City, Appellant.

Kansas City Court of Appeals, February 6, 1899.

Cities of the Fourth Class: CHARTER POWER: WATERWORKS: SANITATION. Under section 4940, Revised Statutes 1879, cities of the fourth class have power to provide for the suppression of fires and to promote the health and comfort of the inhabitants and to contract with waterworks companies to supply the city and its inhabitants with water, and the city is liable on such contract for fire hydrant rents. Cases considered and discussed. Points as to acquiring such waterworks and granting exclusive privileges are undecided.

*Appeal from the Jasper Circuit Court.*—Hon. J. D. Perkins, Judge.

Affirmed.

E. O. Brown and A. H. Redding for appellant.

(1) Under section 4940, Revised Statutes 1879, which was in force at the time ordinance numbered 93 (now 32) was passed, defendant was given the power to prevent and extinguish fires, but no power was given to erect a system of waterworks for the purpose of supplying the city and the inhabitants thereof with water, or to contract with any person, company or association, giving to such person, company or association the exclusive right to furnish a system of water-

works for the use of the city for any length of time whatever, either with or without a vote of its qualified voters. It follows that the contract sued on is void for want of authority in the city to enter into it. R. S. 1879, sec. 4940; Saleno v. Neosho, 127 Mo. 627-641; National Foundry, etc., Works v. Water Co., 52 Fed. Rep. 33. (2) Prior to the revision of 1889, the only power given cities of the fourth class touching the point in judgment, was the power to prevent and extinguish fires coupled with the general welfare clause. By the revision of 1889, section 1589, cities of the fourth class were, for the first time, given the power, by ordinance, upon a vote of two thirds of the qualified voters, to contract with any person or company, granting to such person or company the exclusive right to furnish water for the city and the inhabitants thereof for a time not exceeding twenty years. Prior to the enactment of section 1589, Revised Statutes 1889, we find nothing in the statutes governing cities of the fourth class, which gives any authority whatever for such cities, with or without a vote of its citizens, to contract with any person or company for a system of water works for the city or its inhabitants. R. S. 1889, sec. 1589; R. S. 1879, sec. 4940; Water and Electric Light Co. v. Lamar, 128 Mo. 188; National Foundry, etc., Works v. Water Co., 52 Fed. Rep. 33. (3) The rule has been long and well established that municipal corporations possess and can exercise only such powers as are granted in express words. Those necessarily or fairly implied in and incidentally to the power expressly granted. Those which are essential to the declared object or purpose of the corporation, not simply convenient, but indispensable. Where there is any reasonable doubt concerning the existence of power, such doubt is resolved against the corporation, and the power denied. St. Louis v. Telephone Co., 96 Mo. 623; Dillon, Mun. Corp. [3 Ed.], sec. 89; St. Louis v. Herthel, 88 Mo. 128; Kansas City v. Swope, 79 Mo. 446-449; St. Louis v. Laughlin, 49 Mo. 562;

Leach v. Cargill, 60 Mo. 317; Cape Girardeau v. Riley, 72 Mo. 223; Corrigan v. Gage, 68 Mo. 544; St. Louis v. Weber, 44 Mo. 547.

STEWART, CUNNINGHAM & ELIOT and GALEN & SPENCER for respondent.

(1) The power given a city of the fourth class by section 4940, Revised Statutes 1879, to "prevent and extinguish fires" and to provide for "the health and welfare of the city, its trade, commerce and manufactories," includes the authority to secure and contract for a supply of water. That section invested defendant with power to make the contract here sued on without its being ratified by popular vote. 1 Dillon, Mun. Corp. [4 Ed.], secs. 143-146; Allen v. Taunton, 19 Pick. 485; Hunneman v. Fire District, 37 Vt: 40; Green v. Cape May, 41 N. J. L. 45; Van Secklen v. Burlington, 27 Vt. 70; Livingstone v. Pippen, 31 Ala. 542; Rome v. Cabbot, 28 Ga. 50; Bluffton v. Studebaker, 106 Ind. 129; Saleno v. Neosho, 127 Mo. 627. (2) The only limitations upon this power to supply water or to contract for a supply of water, or upon the mode of exercising that power, are such as have been imposed by the constitution or statutes of Missouri. Subject to those limitations, the discretion of the mayor and board of aldermen is absolute and it can not be restricted by the courts. 1 Dillon, Mun. Corp. [4 Ed.], secs. 94, 102, 73, and notes, and chap. 4; Page v. St. Louis, 20 Mo. 136; Brush v. Carbondale, 78 Ill. 74; Sheldon v. School District, 25 Conn. 224; Poillon v. Brooklyn, 101 N. Y. 132.

SMITH, P. J.—This is an action which was brought by the plaintiff, an incorporated water company, against the defendant, a city of the fourth class, to recover the sum of $1,187.50 for the use and rent of ninety-five fire hydrants for the months of July, August and September, 1894, under the terms of a contract entered into between the plaintiff's assignor, James O'Neill, and the defendant.

On the twenty-fifth day of July, 1889, the council of the defendant passed an ordinance which was duly approved by the mayor and attested by the city clerk, whereby there was granted to James O'Neill and his assigns the right to construct, maintain, operate and own a system of waterworks in the defendant city, to supply said defendant city and its inhabitants with water suitable for domestic and fire purposes; to lay down water pipes through the streets, as was necessary for the distribution of water throughout the defendant city, so as to afford the most adequate supply for domestic use and the greatest protection against fires, for a period of twenty years. The ordinance further provided that there should be furnished by said grantee and located on the lines of said water mains not less than thirty-five double tipped fire hydrants, together with such additional hydrants as should, from time to time, be ordered by the city, and for the use of which the city agreed to pay, quarterly, an annual rental of $50.

STATEMENT.

The said grantee, within the time and in the manner required by said ordinance, accepted the provisions of the ordinance. The waterworks system provided for by the said ordinance was, in due time, constructed and accepted by the defendant city. The said grantee O'Neill, in a short time thereafter, with the approval of the defendant city, assigned his interest under said ordinance contract to the plaintiff.

It stands admitted on the record that the plaintiff furnished the defendant city both the water and the fire hydrants required by the several ordinances of the latter, and also that said hydrants so required were used continuously and paid for by defendant city at the price named in the ordinance up to the date of the rental sued for. It stands further admitted that the income and revenue provided by said city for each year, deducting the ordinary expenses of maintaining the city government, had been sufficient and would be

sufficient to pay the said annual hydrant rental accruing under the provisions of said ordinance. There is consequently no contention that the provisions of said ordinance is violative of any of the limitations imposed by the state constitution upon the power of municipal taxation. The charter under which the defendant city was organized, and through whose provisions it derived its powers, is to be found in article V of chapter 89, Revised Statutes 1879.

The underlying question in the case is whether the power to pass the ordinance in question is conferred upon the defendant by any provision of its charter. It is expressly provided in section 4940 of that instrument that "the mayor and board of aldermen shall have power by ordinance to prevent and extinguish fires * * * and to pass such ordinances, not inconsistent with this article (article V) as may be deemed expedient in maintaining the peace and good government, health and welfare of the city," etc. There are no other words contained in the charter grant of power to the defendant city which it can be claimed either expressly or by necessary implication confer the power to pass said ordinance. The question, then, is whether the words of the charter just quoted conferred this power.

CITIES of the fourth class: charter power: waterworks: sanitation.

Certainly it can not be claimed that it is thereby expressly conferred. If it is granted at all it must be necessarily, or fairly implied in or incident to the powers expressly conferred. Dillon on Mun. Corp., secs. 89, 561; State ex rel. v. Walbridge, 119 Mo. 383; St. Louis v. Laughlin, 49 Mo. 562; Carroll v. Campbell, 108 Mo. 550; State ex rel. v. Murphy, 130 Mo. 10.

The defendant was expressly authorized by its charter to provide by ordinance for the prevention and extinguishment of fires. What power, if any, was necessarily implied in, or incident to, this express grant? Defendant city was

given no express power to procure water, and yet without this power the express grant would be inefficacious. Science, so far as we know, has not yet suggested any adequate means of extinguishing great fires without the application of water. And this was a fact, presumably, within the knowledge of the legislature when it enacted the defendant's charter. It is not to be inferred that that body intended by the enactment of the defendant's charter, to confer a mere naked power incapable of enforcement by ordinance. It is clear that unless the power to procure water be implied in the express grant the latter must remain vain and nugatory. The power to extinguish fires fairly and necessarily implies the power to effectuate the intent involved in the grant by the execution of its incidents. Whatsoever the law necessarily implies in a statute is as much a part or parcel thereof as if expressly stated therein. State ex rel. v. Gas Light Co., 102 Mo. 472.

In Green v. Cape May, 41 N. J. Law, 45, it was held that a grant of the express power to suppress fires carried with it the right to purchase fire engines. And a similar ruling was made in Allen v. Taunton, 19 Pick. 485, and where it was said, among other things, that if the expenditure be in furtherance of some duty enjoined by statute a contract made in reference thereto will be valid and binding upon the town. In Bluffton v. Studebaker, 106 Ind. 129, it is said, in effect, that the power to purchase fire engines by an incorporated city does not of necessity depend upon the question whether its charter has or has not expressly granted such power, since such power is inherent in the corporation. And to the same effect is Carlton v. Washington, 38 Kan. 726, and Bridgford v. Tuscumbia, 16 Fed. Rep. 910; Robinson v. St. Louis, 28 Mo. 488; 1 Dillon, Mun. Corp., sec. 134. If the grant of power to suppress fires carries with it as an incident the power to purchase fire engines to be used for the purpose of extinguishing fires, why

does not the same grant carry with it the further incidental power to procure water for a like purpose? A fire engine without water would be quite a useless machine in the hands of a city government. Water is quite as indispensable in extinguishing fires as a fire engine. Where there is a system of waterworks having proper pressure, fire engines can be dispensed with, but in no case can the grant of power be made efficacious without a supply of water. It is apparent that the reasons why the grant of power to suppress fires should carry with it the power to procure water to extinguish fires are much more cogent than those which sustain the power to purchase fire engines.

But the power of the defendant to procure water, we think, is not solely dependent upon the grant to suppress fires but may be deduced from the other charter grant of power, the words of which have already been quoted. It has been held that a city having the power, as here, to pass ordinances respecting the peace, good government, health and welfare of its inhabitants is authorized as a sanitary regulation to contract to procure a supply of water by boring an artesian well, or otherwise, and is the judge of the mode best adapted to accomplish the object. 1 Dillon on Mun. Corp., sec. 146. In Livingstone v. Pippen, 31 Ala. 542, it was held that under the express grant of power referred to by us in the last preceding paragraph, the corporate authorities of the town had the power to procure water, and that nothing was more important as a sanitary regulation than an abundant supply of water. And it was further held in the same case that the corporate authorities having the power to procure the supply of water were themselves the judges of the mode and manner best calculated to accomplish that object. And as the corporate authorities had the power to procure water they had authority to obtain terms and enter into the necessary contract for the purpose, provided they

were not restricted to any particular mode by their charter, which is not claimed here. Bridgeford v. Tuscumbia, *supra;* Carlton v. Washington, *supra.*

In Rome v. Cabbot, 28 Ga. 50, the mayor and common council of the city under the charter had the power to make such contracts in their corporate capacity as they deemed necessary for the welfare of the city which was not in conflict with the constitution and laws of Georgia and the United States. The city entered into a contract for the construction of a system of waterworks and it was held that the grant of power was broad enough to cover the contract. In Water Works v. Atlantic City, 39 N. J. Eq. (12 Stewart) 367, the city had power by its charter to provide for a supply of water and it was held that in this power was implied the power to furnish the supply by contract. It was further said, in the course of the opinion, that if the city had, by the contract, secured a supply of wholesome water, and the contract had been fairly obtained, and the water company had kept the agreement, there appeared to be no good reason why it should not be protected.

It seems clear to us, both upon reason and authority, that the power to procure water for the suppression of fires and to promote the health and comfort of the inhabitants of the defendant city, must be necessarily included in the grants expressed in its charter. In the exercise of this power the defendant was restricted to no particular mode. This power, of course, could not be exercised in a manner that was inconsistent with the limitations of its own charter, or of those contained in the constitution and laws of the state and the United States. In addition to this, it is to be observed that the ordinance contract entered into giving effect to the grant, must be free from fraud, and reasonable and fair in its provisions. There is no contention that it is subject to any objection of this kind.

We are not to be understood, from what has been said, as holding that the city, under its express or implied powers, had authority to enter into a contract for the construction of waterworks, of which it was, by the terms of the contract, to become the purchaser or owner at any time, with or without a vote of the qualified voters thereof. Whether such a provision of the contract would be valid or not it is unnecessary to decide. There is a provision of that kind in the ordinance in question but it is severable from the other provisions to which we have referred, and whether valid or void does not affect the question involved in the present case.

In this connection it may be proper to remark that section 4940, Revised Statutes 1879, referred to at the outset, was amended in the statutes of 1889, and in its amended form it there appears as section 1589. By reference thereto it will be seen that the legislature has, by the terms thereof, imposed certain limitations on the manner in which the power to suppress fires is to be exercised.

In Saleno v. Neosho, 127 Mo. 627, it was said that, under its provisions the city was given the power to prevent and extinguish fires, and for that purpose to provide the necessary means, including water, without first taking a vote of the qualified voters thereon, authorizing it to do so; but it had no power to erect a system of waterworks, nor to contract with any person or corporation so as to grant the exclusive right to furnish any system of waterworks for the use of the city for any length of time not exceeding twenty years without being authorized so to do by a vote by ballot of two thirds of the qualified voters voting at an election had for that purpose, provided by ordinance. This case though cited and relied on by both parties to this action is an authority which we think is conclusive in favor of the plaintiff on the questions presented by the record for our consideration.

The ordinance contract in issue, we think, was within the scope of the power granted to the defendant by its charter. It was not *ultra vires*, and as it was not against public policy, nor fraudulent, nor unreasonable, no reason is seen why it should not be enforced the same as the contract of a business corporation or a natural person.

The judgment, which was for plaintiff, could not, in our opinion, have been otherwise on the conceded facts of the case, and it therefore results that an affirmance must be ordered. All concur.