FOR THE

## WESTERN DISTRICT,

| 34 | 411 |
| 85 | 30 |

## 1852.

## COUNTY OF CUMBERLAND.

INHABITANTS OF YARMOUTH, *in equity, versus* INHABITANTS OF NORTH YARMOUTH *&* als.

Private corporations exist by legislative grants, conferring rights and powers for special purposes.

Such grants constitute legal contracts, and the Legislature cannot impair the obligation of them.

A company, incorporated as trustees of a fund, with the power and duty of investing it and appropriating its income to the public schools of a town, is a *private* and not a *public* corporation.

Though the Act incorporating the trustees authorized them to *create* the fund by a sale of the *town's* property, the approval of the Act, *by the town,* may be inferred from their long continued acquiescence in the trustees' proceedings according to its provisions.

In such a case, the trustees, holding the fund, *as a private corporation,* for the use of such schools, under a legislative contract, cannot be divested of it or of any part of it, by any legislative action.

A statute, therefore, which should assume to distribute the fund between the schools of such town and those of another town, would be inoperative, although the latter town be created by a division of the former.

BILL IN EQUITY.

The defendants demurred, and also filed their several answers. But, at the hearing, the parties being desirous of a decision upon the merits, the demurrers were considered by the Court, as having been waived.

The following is an outline view of the claim. — Prior to 1806, the town of North Yarmouth owned a tract of land, appropriated to the use of schools.

In that year, the Legislature of Massachusetts incorporated certain persons, with their successors, as trustees of the *school fund* in North Yarmouth, authorizing them to sell the land, and convert the avails into a fund, and apply the income forever to the public schools in that town "among the several districts in proportion to what they pay of town taxes."

The land was accordingly sold, and a fund was thereby created, of which the income was duly applied to the schools, until 1821, when the town was divided and the westerly part made into the town of Cumberland.

Pursuant to the act of division, a part of the school fund was paid to Cumberland. The residue of the fund was kept at interest and its incomes continued to be duly applied to the schools in North Yarmouth.

In 1829, the Legislature empowered the trustees to apply the income of the fund in proportion to the number of scholars in each district in North Yarmouth. The application was accordingly so made, until, in 1849, a portion of that town was set off by an Act of the Legislature, and incorporated into the town of Yarmouth.

The fourth section of that Act provided as follows; "the school funds belonging to the town of North Yarmonth shall be divided between the said towns, in proportion to the number of scholars belonging to them respectively, according to the returns made by the agents of the several school districts in the present year. The trustees of the school funds in the town of North Yarmouth, who shall be inhabitants of the territory hereby created into a new town, at the time this Act shall take effect, shall be trustees of the school fund

Yarmouth *v.* North Yarmouth.

of the town of Yarmouth, and, after the division of said fund, shall cease to be trustees of the school fund of North Yarmouth, and they shall have such powers and be subject to such duties in the care of the school funds of Yarmouth, and in the application of the same to the use of schools in said town as are prescribed by law in respect to the school funds of North Yarmouth."

Since that Act of incorporation, none of the school fund or of its income has been applied to the schools of Yarmouth; and the inhabitants of that town, in order to obtain a proportion of the fund or of its income for the use of their schools, have brought this bill against the inhabitants of North Yarmouth, and against the trustees of the school fund and against William Buxton, their treasurer.

*Barnes,* for the plaintiffs.

The Legislature had the power to direct the division of the fund, without, or against the assent of the town of North Yarmouth.

This results from the sovereignty of the State, always thus exercised over towns. It results also from the plain and equitable duty of dividing privileges with burdens, where compensating adjustments cannot otherwise be made.

The equitable discretion of the Legislature on such divisions is supreme.

Such sovereignty has been asserted and exercised from the earliest times, in the Commonwealth and in this State.

Such usage, long existing unquestioned, displays the essential principle on which it rests. *Windham* v. *Portland,* 4 Mass. 390.

The only limitation upon the sovereignty is, that in distributing the property and privileges of a public corporation, the division must be made *at the time,* when the corporation is divided. *Hampshire* v. *Franklin,* 16 Mass. 76; *Bowdoinham* v. *Richmond,* 6 Greenl. 112; *North Anson* v. *Anson,* (1849, not reported.)

The assent of the town is no more required, because the fund is in the hands of a trust corporation, than if in the

town treasury, or still in lands. The *form* in which the fund subsists, does not affect the relation of sovereignty between the state and the *town*.

The history of this particular fund, — the great antiquity of the original grant, — the large extent of the original town, — the want of sense in the idea that the whole enjoyment of the grant should, after many generations, be narrowed down to a small fraction of territory, retaining only the municipal *name* and *entity*, — the control assumed by the State in 1806, in placing the fund in the hands of trustees, with the new element, not in the original grant, that the benefit of the fund should be enjoyed according to the *property* in the several districts, — the imperative partition of the fund when Cumberland was set off in 1821, to which North Yarmouth *submitted*, not *assented*, — the resumption, by the State in 1829, of the original republican principle, which was in the original grant, that the fund should be apportioned among the people, equally, not upon property; all these go to unfold and to vindicate the sovereignty of the State, in directing and dividing the enjoyment of the fund, now, as heretofore, and show that the municipality of North Yarmouth has amply recognized and admitted the principle of sovereignty, arising in the case.

The assent of the trustees was not required, for the lawful division of this fund.

If it were, then the State is barred of its sovereignty, in one of its most common and necessary functions.

The division of a town is a measure of political convenience or necessity. The Legislature alone can determine the just conditions of division. If trustees of a fund like this can prevent the fulfillment of these conditions, then they can control and hinder the Legislative action, and forbid the division of the town, except at the risk of hardship and injustice to innocent parties.

The real question of constitutionality, if any, lies in this supposed issue between the trustees and the Legislature.

Upon this point, it is sufficient for the complainants in their

opening argument, to aver that the Act is constitutional, and that subjection to *this* Legislative control was a necessary element in the charter of the trust corporation.

Exclusive regard to a supposed *contract* between these parties and the State, or between the State and the present town, through the trustees, is a fallacy. It overlooks the prior and superior contract between the *original grantors* and the State.

This requirement that the fund be divided, creates no alteration or alienation of it. Not a fraction of a cent is turned aside from its former course. The *merit* of the division is, that it keeps up, the same appropriation precisely to the same persons, by the same men. By the Act of division, the fund was to be applied in 1850, and afterwards precisely as it had been for twenty years before, *per capita* of all the children in the two towns.

When the Legislature alter the *status*, the appendage changes with it. Subjection to legislative control is an element essential to the existence of a trust corporation. Such a corporation becomes a municipal one. How was it that, in 1806, the Legislature took away the fund, except on the expectation that it was subject to their future control?

Where then lie the equity, and the sense, and the common justice of the case?

*W. P. Fessenden*, for the defendants.

HOWARD, J. — The parties expressed a desire, at the argument, that this case might be heard and determined, as if free from technical difficulties. Yielding to their request, we pass the demurrers, to examine the general merits upon the bill and answers. The leading facts are not in controversy.

It seems that the town of North Yarmouth claimed a tract of land called the "school farm," consisting of about two hundred acres, originally appropriated for the use of schools in that town. Whether this was a grant from the proprietors, or from the government, does not appear. By a special Act of the Legislature of Massachusetts, of March 3, 1806, certain inhabitants of that town were incorporated as "the

trustees of school funds in the town of North Yarmouth;" they and their successors to be and continue a body politic and corporate, by that name forever; and to have a common seal, with power to sue and to be sued by that name. The Act provided further, that the number of trustees should not be more than eleven, nor less than seven, and that they should fill all vacancies occurring in the board, by death, resignation or otherwise, from the inhabitants of that town, and have power to remove any of their number who might become unfit from any cause, for discharging their duties as trustees. They were authorized and empowered by the same Act to sell the "school farm so called, consisting of two hundred acres more or less, belonging to said town of North Yarmouth, which was originally appropriated for the use of schools, and to put out at interest the money arising from such sale, in manner hereinafter mentioned, and for that purpose." They were to "sell and convey in fee simple," and place the proceeds on interest, and to invest the interest with the principal until the annual income should be $300, and then to apply that sum "towards the annual support of public schools in said town, to be appropriated among the several school districts in said town, in proportion to what they pay of town taxes. And it shall never be in the power of said town or trustees to alter or alienate the appropriation of the fund."

The trustees accepted the trust, conveyed the land, received the proceeds, and have had the exclusive possession and management of the funds. Whether the town assented does not directly appear, but it may fairly be presumed from their long acquiescence and receiving the income under the provisions of the Act without objection, that they assented to its passage. *Lanesborough v. Curtis,* 22 Pick. 320. The Act of 1821, providing for the incorporation of Cumberland, from a portion of North Yarmouth, and for a division of the school funds; and the Act of 1829, authorizing the trustees to appropriate the income of the funds, before the annual amount was $300, do not affect the principles of this decision.

We assume, then, that the trustees of the school funds in North Yarmouth, were legally incorporated, and that they have performed their duties according to the terms of their charter in raising, investing, managing, and in exclusively possessing and controlling the funds, in pursuance of the objects for which they were incorporated, until the passage of the Act of incorporation of Yarmouth, (August 8, 1849, c. 264.) This is admitted, or assumed at the argument. Indeed, the complainants proceed upon this assumption.

The plaintiffs claim a portion of these school funds, according to the provisions of the 4th section of their Act of incorporation. The defendants resist the claim, upon the ground that the funds were not within the control or direction of the Legislature, and that the fourth section, which provides for the division of the funds, is unconstitutional and void. It is not pretended that either North Yarmouth, or the trustees assented to the provisions of that section, but they seem to have resisted them throughout. Were they binding upon the trustees, and could the Legislature authoritatively require them to divide the funds thus intrusted, and deliver them to others? This brings us to the consideration whether the trustees were constituted a public or a private corporation.

The distinction between public and private corporations has reference to their powers, and the purposes of their creation. They are public, when created for public purposes only, connected with the administration of the government, and where the " whole interests and franchises are the exclusive property and domain of the government itself." Over these the Legislature has power, not limited by the constitution, to impose such modifications, extensions or restraints as the general interests and public exigencies may require without infringing private rights. All corporations invested with subordinate powers, for public purposes, fall within this class, and are subject to legislative control. All other corporations are private. They exist by legislative grants conferring powers, rights and privileges, for special purposes. These grants

are essentially contracts, which the Legislature cannot impair or change without the consent of the corporation. Coke Lit. § 413; Vin. Abr. Corp. a. 2; *Phillips* v. *Bury*, 2 T. R. 346; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Allen* v. *McKeen*, 1 Sumner, 276; *The People* v. *Morris*, 13 Wend. 325; *Penobscot Boom Corp.* v. *Lamson*, 16 Maine, 224; Story's Com. on Const. § 1385 — 1388; Angel & Ames on Corp. 9, 27, 28.

The fee of the "school farm" was in the town of North Yarmouth, in trust for the use of schools, in 1806, when the Legislature of Massachusetts, by consent of those interested, as we must presume from their entire acquiescence, authorized the sale of the land, and the creation of a personal fund from the proceeds, by the trustees then incorporated, in trust for the same use. This fund was never in the town, but was vested, by the Act, in the trustees, as a corporation, for the use mentioned, forever. They did not constitute a municipal or public corporation, although the object of its creation might have been a public benefit. Their charter was a grant from the State, partaking the nature of a contract, which they accepted, and in which the government had no interest. This was a franchise, which involved the right to possess and control property, and the right to perpetuate a corporate immortality. 2 Black. Com. 37. Though springing from the grant, the franchise, and the rights flowing from it, were no more subject to the control or interference of the Legislature, than were private rights of property, unless on default of the corporation, judicially determined. 2 Kent's Com. 306. *Trustees of the New Gloucester School Fund* v. *Bradbury*, 11 Maine, 118, is a case similar to this at bar, and directly in point. *Richardson* v. *Brown*, 6 Maine, 355; *Terrett* v. *Taylor*, 9 Cranch, 43; *Pawlet* v. *Clark*, 9 Cranch, 292.

The Act relating to the separation of this State from Massachusetts, provides, that "all grants of lands, *franchises, immunities, corporate and other rights, &c.,* shall continue in full force," after Maine shall become a separate State. The

first section of that Act, embracing the provisions referred to, forms a part of our Constitution, Art. 10, § 5, condition 7; Act of Massachusetts, June 19, 1819. The statute of this State, of February 19, 1831, c. 492, § 1, to which the Legislature of Massachusetts gave its consent, so far altered the terms and conditions of the Act relating to the separation of the States, "that the trustees of any ministerial or school fund, incorporated by the Legislature of Massachusetts in any town within this State, shall have, hold and enjoy their powers and privileges, subject to be altered, restrained, extended or annulled, by the Legislature of Maine, with the *consent of such trustees, and of the town for whose benefit such fund was established.*" In this case there was no consent.

It follows, that the "trustees of the school funds in North Yarmouth," constituted a private corporation; that they can hold and enjoy their rights and privileges under their charter, independent of legislative interference or control, except for causes which do not now appear; and that so much of the fourth section of the Act to incorporate the town of Yarmouth, as provides for the division of "the school funds belonging to the town of North Yarmouth," is inoperative and void. The constitution is imperative, that the *Legislature shall pass no law impairing the obligation of contracts.* Const. Maine, art. 1, § 11; Const. U. S., Art. 1, § 10, cl. 1.

This result renders further consideration of the merits, or of the objections, unimportant.

SHEPLEY, C. J., TENNEY, WELLS and APPLETON, J. J., concurred. *Bill dismissed with costs for defendants.*