In the Matter of the Application of THOMAS J. KENNA, Appellant, for a Writ of Mandamus to HENRY H. ADAMS, County Treasurer of Kings County, Respondent.

*Kings county — act relative to indexing deeds — work to commence immediately upon the passage of the law — the expenses of the register are a county charge and no appropriation is required — the county treasurer may issue bonds to pay them.*

It was the purpose of chapter 365 of the Laws of 1894, an act providing "for indexing and reindexing conveyances, mortgages and other instruments relating to lands and liens thereon in the county of Kings," that the register of the county should proceed at once to cause all conveyances and mortgages on record in his office to be lexicographically indexed, where that had not been done at the time of the passage of the act, and the doing of the work in question was not postponed, by the terms of the act, until January 1, 1895.

Where the register of the county of Kings has performed such services his claim for the same is payable generally as a county charge, independent of any particular provision of the act in question, and is not dependent upon an appro-

priation by the board of estimate of the city of Brooklyn and county of Kings, made under sections 20 and 31 of said act.

If the county treasurer is without funds to pay a claim of this nature, he is given authority by section 31 of the act to raise the money necessary by the issue of county bonds, provided always that the total amount of such bonds does not exceed the amount actually appropriated or required to carry out the provisions of the act.

APPEAL by the applicant, Thomas J. Kenna, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 2d day of August, 1895, denying his motion for a peremptory writ of mandamus.

*Almet F. Jenks*, for the appellant.

*George F. Elliot*, for the respondent.

BROWN, P. J.:

The applicant, during the year 1894, was the register of the county of Kings, and as such caused certain conveyances and mortgages recorded in his office to be lexicographically indexed. The bill for such work, having been audited by the auditor of said county, was presented to the county treasurer, who refused to pay it, whereupon this proceeding was instituted. The application for the writ was denied by the Special Term, and the order denying such application states that such denial was on the ground " that the relator is not legally entitled thereto."

The determination of this appeal requires us to construe certain sections of chapter 365 of the Laws of 1894. Authority for the reindexing of the conveyances and mortgages is claimed, by the applicant, to exist by reason of that provision in section 14 of said act which provides that " the register shall cause all conveyances and mortgages now recorded in his office to be lexicographically indexed where not already done, in the same manner and form as convey-ances and mortgages are now lexicographically indexed in his office, and the auditor of said county shall audit monthly and the treas-urer of said county shall thereupon pay to said register his charges for said work at the rate now paid for like work in said office, but no more."

The contention of the respondent is that the statute authorized such work to be performed only after January 1, 1895, but this argument has not, we think, any support in the provisions of the law in question.

The title of the act is " An act to provide for indexing and reindexing conveyances, mortgages and other instruments relating to lands and liens thereon in the county of Kings," and its purpose was to introduce and establish in that county the block system of recording and indexing. It provides that after January 1, 1895, every instrument affecting real estate or chattels real in said county which shall be recorded in the register's office of said county shall be recorded and indexed pursuant to the provisions of that act. In other respects it took effect on April 25, 1894, the date of its passage. It was made the duty of the register forthwith to make the preparations necessary to inaugurate and put in operation the new system established by the act. This work consisted of the preparation and publication of a map of the county, subdivided into sections and blocks, the procurement of block index books, daily indexes and ticklers and record books. The act also provided that after January 1, 1895, the register should keep in his office alphabetical indexes prepared in lexicographical or such other form as he should think proper, which indexes were to take the place of those theretofore required to be kept in said office, and said register was directed, in the language which I have above quoted, to cause to be reindexed lexicographically, where it had not already been done, all conveyances and mortgages which, at the time of the passage of the act, were recorded in his office.

There is nothing in the scope or purpose of the law which required that the reindexing should be postponed until January 1, 1895. Indeed, there was every reason for its immediate performance. The intent of the law was that all conveyances and mortgages in said county then recorded or those thereafter to be recorded should be indexed in the manner provided, and it is very evident that the public interests would be subserved by reindexing the old conveyances as expeditiously as possible, and we are of the opinion that the register was required to cause this work to be done immediately upon the ·enactment of the law.

The second contention of the respondent is that no funds have

been provided by the board of estimate of the city of Brooklyn and county of Kings for the payment of the work. This contention is based upon the following sections of the act:

"§ 20. The said board of estimate is hereby authorized and directed, from time to time, to determine the amounts of money not herein otherwise provided for, which may be required to carry out the provisions of this act until the first day of January, eighteen hundred and ninety-five, and to appropriate said moneys therefor, and the county treasurer of Kings county is authorized to raise such money, from time to time, by the issue of bonds of said county, as hereinafter provided.

"§ 21. No expenditure shall be made or obligation incurred under any provision of this act, unless otherwise herein specifically authorized and provided for, until an appropriation therefor shall have been made by the said board of estimate, nor in excess of any such appropriation."

"§ 30. For the purpose of carrying out all the various provisions of this act the register and county clerk may employ an expert, who shall act as superintendent, and such clerks and assistants and other expert persons as may in their respective judgment be required in their own offices; provided, however, that all of the expenses, including printing, stationery and material as may be necessary for the purposes of this act, and for carrying out all of the provisions of this act, shall not in any event exceed the amount or amounts authorized by the said board of estimate, or otherwise specifically provided for by this act, or other existing law.

"§ 31. The board of estimate of the city of Brooklyn and county of Kings is hereby authorized to include in the final estimate of the moneys to be raised by taxation in said county for the year eighteen hundred and ninety-five, and the succeeding years if required, until said block index or reindexed liens and compilations are completed, the amounts of money which may be required by said register and county clerk to carry out the provisions of this act in respect thereto and not otherwise provided, and to appropriate said moneys therefor; and the county treasurer of said county is authorized and directed to pay, out of the amounts so required and appropriated, the expenses authorized by this act, upon the requisition of the said register and county clerk for the amounts required by each in his

own office, and said county treasurer is authorized to raise whatever money may be required, not otherwise provided for, from time to time, by the issue of county bonds in such amounts, in such series and payable at such times as the county treasurer may determine, bearing interest at a rate not to exceed four per cent, and not to be sold at less than par, provided that the total amount of such bonds shall not exceed the amount actually appropriated or required to carry out the provisions of this act."

It will be observed that all of these provisions contemplate, for some of the expenses arising under the act, a source of payment other than an appropriation by the board of estimate. Thus, during the year 1894, said board is authorized to determine the amount of money required to carry out the provisions of the act, not therein "otherwise provided for," and expenditures, by section 21, are limited to such appropriations "unless otherwise * * * specifically authorized and provided for" by the act. A similar limitation and exception is made in sections 30 and 31.

The only provision of the law in question to which the exception can have any application is that contained in section 14, which requires the county treasurer to pay the bills for reindexing the old conveyances, and bills for such work appear to be placed, with reference to their payment, upon a different basis from bills for any other services performed under this act. They are required to be audited by the auditor of the county before they can be paid, while all other expenses incurred under this act are, by the 31st section, required to be paid by the county treasurer upon the requisition of the register and county clerk.

Again, section 14 appears to have reference to some other law directing the lexicographical indexing of conveyances and mortgages by the register and fixing the amount to be paid therefor. The command of the section is to cause to be reindexed all conveyances and mortgages "where not already done," and the register is to be paid for the work "at the rate now paid for like work."

We are of the opinion, therefore, that the payment of the applicant's bill is not dependent upon an appropriation by the board of estimate under sections 20 and 31, but that it is payable generally as a county charge independent of any particular provision of the statute referred to. The affidavit of the applicant sets forth that he

has from time to time presented bills for similar work to the auditor for audit and to the treasurer for payment, and that with the exception of the bill of which payment is now sought all had been paid as provided by section 14 of said act.

The treasurer made no affidavit in reply to that of the applicant. It is not denied that other bills for similar services have been audited and paid ; that the work for which payment is now claimed has been performed, and it is not asserted that the treasurer has not in his hands funds from which to pay the applicant's bill as a county charge. Under these facts there is no defense to the claim. The law made it the duty of the applicant to cause the work to be done and fixed the compensation therefor, and has directed the respondent to pay the bills. If no provision has been made to obtain the money with which to make payments, that fact should have been stated.

In view of the undisputed fact that other bills for similar services had been audited, we must assume that there is a fund from which the applicant's bill may be properly paid, or else that lawful means of borrowing the money exists.

And we are of the opinion that ample authority exists for raising the money necessary to pay bills of this character in the 31st section of the act, which authorizes the county treasurer to issue bonds of the county, " provided that the total amount of such bonds shall not exceed the amount actually appropriated or required to carry out the provisions of this act." This provision of the statute, we think, authorizes the county treasurer to raise money for the purpose of paying the applicant's bill by the issue of bonds, in the absence of any funds in his hands out of which said bill can be properly paid.

The order must be reversed and the motion granted, without costs.

Pratt and Dykman, JJ., concurred.

Order reversed and motion granted, without costs.