[No. 1977]

## IN THE MATTER OF THE APPLICATION OF AH PAH FOR A WRIT OF HABEAS CORPUS.

1. STATUTES—TITLE—SUFFICIENCY—HOUSE OF ILL-FAME.
    Stats. 1911, c. 133, secs. 217, 218 (Rev. Laws, 3457, 3458), making it unlawful to keep a house of ill-fame within 800 yards of a schoolhouse, etc., is not unconstitutional, under Const. art. 4, sec. 17, as embracing matter not covered by the title, "An act concerning public schools and repealing certain acts relating thereto."

2. CONSTITUTIONAL LAW—VESTED RIGHTS—HOUSES OF ILL-FAME.
    Stats. 1911, c. 133, secs. 217, 218 (Rev. Laws, 3457, 3458), prohibiting the keeping of houses of ill-fame within 800 yards of schools, etc., is not unconstitutional, as interfering with vested rights, as against one conducting such place in accordance with an ordinance of the city, adopted pursuant to previous legislative authority.

3. STATUTES—HOUSES OF ILL-FAME—STATUTES—REPEAL.
    Crimes and punishment act, effective January 1, 1912, prohibiting the keeping of a house of ill-fame within 400 yards of a school, etc. (Rev. Laws, 6510), did not, until January 1, 1912, supersede Stats. 1911, c. 133, secs. 217, 218, enacted the same day as the other act, and fixing an 800-yard limit.

4. STATUTES—TIME OF TAKING EFFECT—LEGISLATIVE POWER.
    In the absence of constitutional restriction, the legislature is free to fix in each act the time it is to take effect.

5. STATUTES—CONSTRUCTION—CONFLICTING PROVISIONS.
    Separate acts covering the same subject-matter should be so construed, if possible, as to allow both to stand, where the language is consistent and plain.

ORIGINAL PROCEEDING. Application of Ah Pah for a writ of *habeas corpus*. **Application denied.**

The facts sufficiently appear in the opinion.

*James T. Boyd, A. N. Salisbury,* and *W. D. Jones,* for Petitioner.

*Cleveland H. Baker,* Attorney-General, for Respondent.

By the Court, SWEENEY, C. J.:

The petitioner, Ah Pah, was convicted on the 26th day of May, 1911, in the justices's court in Reno, Nevada, for keeping a house of ill-fame within 800 yards of a certain designated schoolhouse, situated in the city of Reno, and sentenced to pay a fine of $50, or, in the event he failed to pay said fine, to serve twenty-five days in the county jail. Failing to pay the fine, petitioner was arrested and taken into legal custody, and now seeks the aid of this court, through *habeas corpus* proceedings, to relieve him of the judgment, because, as maintained, the section of the law under which he was convicted (Stats. 1911, c. 133) was unconstitutional and void.

It is urged in support of petitioner's contention that the sections in question are unconstitutional upon several grounds, which we will review in the order they are raised.

First, it is contended that the sections are unconstitutional, for the reason that the title of the act in question is in conflict with section 17, article 4, of the constitution of Nevada, which provides: "Each law enacted by the legislature shall embrace but one subject, and matters properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but, in such case, the act as revised or section as amended, shall be reenacted and published at length."

Practically this same constitutional phase was recently before this court for consideration in the case of *State ex rel. John Sparks et al.* v. *State Bank and Trust Company et al.*, 31 Nev. 456, and this court, in passing upon the question, used this language, which, we believe, analogously reasoning, disposes of this point contrary to the petitioner's contention: "It is claimed that this act is in violation of section 17, article 4, of our state constitution,

in that the subject of the act is not expressed in the title; that the statute is invalid, because it embraces more than one subject; that the provisions of section 10 [Stats. 1907, c. 119] are in violation of section 20, article 4, of the constitution, which forbids the passage by the legislature of local or special laws regulating the practice of courts of justice; that, because the action is brought in the name of the state, on the relation of the bank commissioners, there is no proper party plaintiff; that section 10 of the statute is void, in that it attempts to delegate to an executive board judicial functions, in violation of section 1, article 3, of the constitution; and that this section of the act denies appellants equal protection of the laws, and is therefore in conflict with section 1 of the fourteenth amendment of the Constitution of the United States. The main principles controlling these questions have been well-nigh settled by this and other courts. That section 17, article 4, of the constitution, providing that 'each law enacted by the legislature shall embrace but one subject and matters properly connected therewith,' is mandatory must be conceded. In regard to this objection, we need only determine whether this action and the decree of the district court relate to matters germane to the subject expressed in the title of the act, or to what is properly connected therewith. It appears to be admitted that, if the title had simply specified that the act was one regulating or relating to banking,.the statute might be sustained, although it is urged, in another division of the brief, that the act is void, because it relates to more than one subject. If it does so relate, the part properly connected with the title would not be void, while the remainder might be open to rejection. If the different provisions of this statute could be deemed sufficiently connected under a title simply designating it as 'An act relating to banking,' we see no reason why they may not be considered so with a title which designates one or more of the matters to which the others are properly connected. Under the language of the constitution, no necessity appears for requiring separate acts, or even separate

designations in the title, for all the different provisions in this statute."

The title of the act under consideration reads as follows: "An act concerning public schools, and repealing certain acts relating thereto." Sections 217 and 218 (Rev. Laws, 3457, 3458) under which petitioner was convicted, read as follows:

"Sec. 217. It shall be unlawful for any owner or agent of any owner, or any person, to keep any house of ill-fame, or to let or rent to any person whomsoever, for any length of time whatever, to be kept or used as a house of ill-fame, or resort for the purpose of prostitution, any house, room, or structure situated within eight hundred yards of any schoolhouse or schoolroom used by any public or common school in the State of Nevada, or within eight hundred yards of any church edifice, building, or structure, erected and used for devotional services or religious worship in the State of Nevada.

"Sec. 218. Any person violating the provisions of section 217 of this act shall be deemed guilty of a misdemeanor, and on conviction shall be fined not less than twenty-five dollars nor more than three hundred dollars, or to be imprisoned in the county jail not less than five nor more than sixty days, or by both fine and imprisonment, in the discretion of the court."

The title of the act in question, we believe, sufficiently expresses the subject of the act, and is sufficiently general in its scope to make it illegal to conduct houses of ill-fame within 800 yards of a schoolhouse, and broad enough to avoid the constitutional inhibition invoked. (*State ex rel. John Sparks et al.* v. *State Bank and Trust Company et al.*, 31 Nev. 456–475; *State* v. *Gibson*, 30 Nev. 353; *Bell* v. *District Court*, 28 Nev. 280, 1 L. R. A. (N. S.) 843, 113 Am. St. Rep. 854; *State* v. *Ah Sam*, 15 Nev. 27, 37 Am. Rep. 454; *State* v. *Commissioners*, 22 Nev. 399; *Ex Parte Livingston*, 20 Nev. 287; *State* v. *Commissioners Humboldt County*, 21 Nev. 235; *People* v. *Bank of San Luis Obispo*, 154 Cal. 194, 97 Pac. 307; *People* v. *Superior Court*, 100 Cal. 105, 34 Pac. 492; *Abeel* v. *Clark*, 84 Cal.

226, 24 Pac. 383; *Ex Parte Liddell*, 93 Cal. 633, 29 Pac. 251; *Wardle* v. *Townsend*, 75 Mich. 385, 42 N. W. 950, 4 L. R. A. 511; *Carter County* v. *Sinton*, 120 U. S. 517, 7 Sup. Ct. 650, 30 L. Ed. 701; 1 L. R. A. (see note with cases appended) p. 362; Cooley's Constitutional Limitations, 141–150.)

It is next contended by counsel for petitioner that the law under which petitioner was convicted is void for the reason: "That the justice court of Reno Township, County of Washoe, State of Nevada, acted wholly without jurisdiction in passing judgment upon the petitioner, and in sentencing and ordering petitioner to be kept in custody of the said C. P. Ferrell, as sheriff of the County of Washoe, State of Nevada, for the reason that, by virtue of a certain act of the legislature of the State of Nevada, approved March 16, 1903 [Stats. 1903, c. 102], entitled 'An act to incorporate the town of Reno, and to establish a city government therefor,' as amended by a certain act of the legislature of the State of Nevada, approved March 13, 1905 [Stats. 1905, c. 71], entitled 'An act to amend the title of, and to amend an act entitled "An act to incorporate the town of Reno, and to establish a city government therefor," approved March 16, 1903,' the State of Nevada has and had, prior to the passing of the act under which petitioner was sentenced and committed, as aforesaid, delegated the right to regulate the location of houses of prostitution within the corporate limits of the city of Reno, and the right to regulate all such matters as are referred to in the complaint herein to the city of Reno; and for the reason that it appears that the city of Reno, and the city counsel of the said city of Reno, acting under and by authority of the acts of the legislature of the State of Nevada, hereinbefore referred to, have exercised the authority and power so delegated to the said city of Reno by the act of the legislature conferring such power and authority on the city of Reno, above referred to, in adopting City Ordinance No. 95 of the city of Reno, entitled 'An ordinance regulating the conduct and maintenance of houses of ill-fame and places of pros-

titution, and other matters relating thereto, prohibiting prostitution and lewdness, and fixing penalties for the violation thereof, adopted September 1, 1908,' a copy of which said ordinance is contained in the transcript of testimony and proceedings attached to the petition herein, and marked 'Exhibit C,' and that by reason thereof petitioner became vested with certain rights which the legislature had no authority to divest or disturb."

After a careful review of the law and the authorities bearing upon this constitutional objection interposed by petitioner, we believe, contrary to petitioner's contention in this respect, that the doctrine is overwhelmingly maintained that the legislative department of our government can never divest the government itself of the inherent right at all times under the police power vested in it under the constitutions, both federal and state, of enacting any legislation which it may deem wise and just for the betterment and preservation of the public health, safety, and morals. (*Wallace* v. *Mayor of Reno*, 27 Nev. 71–87, 63 L. R. A. 337, 103 Am. St. Rep. 747; *New Orleans Coal Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *State* v. *Murphy*, 130 Mo. 10, 31 S. W. 594, 31 L. R. A. 798, affirmed 170 U. S. 78, 18 Sup. Ct. 78, 18 Sup. Ct. 505, 42 L. Ed. 955; *Carthage* v. *Garner*, 209 Mo. 688, 108 S. W. 521; *People* v. *Squire*, 107 N. Y. 593, 14 N. E. 820, 1 Am. St. Rep. 893; *Chicago, M. & St. P. R. R. Co.* v. *Milwaukee*, 97 Wis. 418, 72 N. W. 1118; *State* v. *Winterrowd* (Ind.) 91 N. E. 956, 30 L. R. A. (N. S.) 886; *Beer Co.* v. *Massachusetts*, 97 U. S. 25, 24 L. Ed. 989; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, 24 L. Ed. 1036; *Barbier* v. *Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Mugler* v. *Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Budd* v. *New York*, 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247; *N. O. Gas L. Co.* v. *Drainage Commission of N. O.*, 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831; *Berlin* v. *Gorham*, 34 N. H. 266; *Meriwether* v. *Garrett*, 102 U. S. 472, 26 L. Ed. 197; *Yarmouth* v. *N. Yarmouth*, 34 Me. 411, 56 Am. Dec. 666; *Mobile* v. *Watson*, 116 U. S. 489, 6 Sup. Ct. 398, 29 L. Ed. 620.)

Judge Dillon, in his admirable work on Municipal Cor-

porations, very properly expresses the law on this subject as follows: "Although a franchise or privilege to use the city streets is, when accepted and acted upon, a contract which cannot be impaired, as well as a vested property right which cannot be taken, except by the power of eminent domain, these franchises and privileges are not exempt from the exercise of the police power of the state, either operating directly by legislative enactment, or by delegation to the municipality. It is a general rule that the *right to exercise the police power cannot be alienated, surrendered, or abridged,* either by the legislature or by the municipality acting under legislative authority, by any grant, contract, or delegation, because it constitutes the exercise of a governmental function, without which the state would become powerless to protect the public welfare. Hence, when a franchise or privilege is granted to use the city streets for a public service, the grantee accepts the right upon the *implied condition that it shall be held subject* to the reasonable and necessary exercise of the *police powers* of the state, operating either through legislative enactment or municipal action."

The Supreme Court of the United States, speaking through Chief Justice Fuller, in the case of *New York and New England Railroad Company* v. *Bristol,* 151 U. S. 556, 567, 14 Sup. Ct. 437, 440 (38 L. Ed. 269), voicing the principle which we contend to be the law, contrary to the document announced by the petitioner, says: "It is likewise thoroughly established in this court that the inhibition of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process, or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulations in particulars essential to the preservation of the community from injury."

The Supreme Court of the United States again speak-

ing, through the late Justice Harlan, in the case of *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516, while commenting on the opinion previously decided by that august tribunal in the famous Slaughterhouse cases, 16 Wall. 36, 21 L. Ed. 394, said and quoted: "The decision was that the state, under her power to protect the public health, could abate the nuisance created by the company's business, notwithstanding its works had been established within the general locality designated in its charter; and consequently the legislature could, at its discretion, amend the charter of Hyde Park, and remove the restriction upon its authority to abate nuisances, or invest it with power to regulate or prohibit business necessarily injurious to the public health. * * * So far from the court saying that the state could not make a valid contract in reference to any matter whatever within the reach of the police power, according to its largest definition, its language was: 'While we are not prepared to say that the legislature can make valid contracts on no subject embraced in the largest definition of the police power, we think that, in regard to two subjects so embraced, it cannot, by contract, limit the exercise of those powers to the prejudice of the general welfare. They are the *public health* and the *public morals.* The preservation of these is so necessary to the best interests of social organization that a wise policy forbids the legislative body to divest itself of the power to enact laws for the preservation of health and the repression of crime.' (Pages 750, 751.) * * * The principles upon which the decisions in *Beer Co.* v. *Massachusetts, Fertilizing Co.* v. *Hyde Park, Stone* v. *Mississippi* [101 U. S. 814, 25 L. Ed. 1079], and *Butchers' Union Co.* v. *Crescent City Live Stock Landing Co.* [111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585], rest is that one legislature cannot so limit the discretion of its successors that they may not enact such laws as are necessary to protect the public health or the public morals. That principle, it may be observed, was announced with reference to particular kinds of private business which, in whatever manner

conducted, were detrimental to the public health or the public morals. It is fairly the result of those cases that statutory authority, given by the state to corporations or individuals to engage in a particular private business attended by such results, while it protects them for the time against public prosecution, does not constitute a contract preventing the withdrawal of such authority, or the granting of it to others."

We come now to a consideration of the point as to whether or not the new crimes and punishment act, which goes into effect January 1, 1912, containing the 400-yard limit, supersedes the school law, which contains the 800-yard limit. The new crimes and punishment act, which goes into effect January 1, 1912, deals directly with the general police laws and acts which are *malum prohibitum*, and contains a provision which places a limit of 400 yards to schoolhouses within which houses of ill-fame may be conducted. (Revised Laws of Nevada, 6510.) In 1887 (Stats. 1887, c. 81) the legislature of this state enacted a general law regarding houses of ill-fame, which provided that they shall not be kept within 400 yards of a schoolhouse. It appears that the law under which petitioner was convicted and the new crimes and punishment act were both passed by the legislature on the 15th day of March, 1911. The enrolled bills, when properly authenticated, are deemed conclusive evidence as to the existence of their valid enactment, and their contents, which, when questioned, should always be examined, disclose this to be the fact. (*State ex rel. Coffin* v. *Howell*, 26 Nev. 93; *State* v. *Swift*, 10 Nev. 176, 21 Am. Rep. 721; *State* v. *Rogers*, 10 Nev. 250, 21 Am. Rep. 738; *State* v. *Glenn*, 18 Nev. 34; *State* v. *Nye*, 23 Nev. 99; *State* v. *Beck*, 25 Nev. 68, Am. & Eng. Ency. Law, vol 26, 2d ed. pp. 554, 555, 556; 36 Cyc. 966, 967.)

In consequence, in so far as the legislative intent proper is concerned, to which we must look and be guided in construing statutes, we have that body enacting two measures covering the same subject-matter on the same date, but, providing in the school law that the limit shall be 800

yards and designating that the bill shall go into effect at the time of its passage (Revised Laws of Nevada, 3457); whereas, the crimes and punishment act, which is a statute *in futuro*, contains a provision which designates January 1, 1912, as the fixed time at which the said crimes and punishment act shall go into effect, and which, among other provisions, provides that the limit shall be reduced at this specified future date to 400 yards, as previously established, and repeals all acts in conflict therewith. (36 Cyc. 1106, 1147–1150.)

The legislature, in the absence of constitutional restrictions, is free to fix in each act the time it is to take effect, and an examination of our constitution reveals no such prohibition. (*Matter of Kenna*, 91 Hun, 178, 36 N.Y. Supp. 280; *Thomas* v. *Scott*, 32 La. Ann. 689; *Price* v. *Hopkins*, 13 Mich. 318; *Honeycutt* v. *St. Louis*, 40 Mo. App. 674; *Penn. Co.* v. *State*, 142 Ind. 428, 41 N. E. 937; 36 Cyc. 1192, 1193; Am. & Eng. Ency. Law, vol. 36, pp. 563–565.)

Courts, in construing the legislative intent where acts cover the same subject-matter, should so construe the acts, where it is possible, as to allow both to stand, where the language is consistent, plain, and unambiguous, and the legislative intent clear. (*Flack* v. *Rogers*, 10 Nev. 319; *Frost* v. *Wenie*, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614; 36 Cyc. 1077, 1147.) A careful review of the statute of these two laws in question, dealing with the same subject-matter, we believe compels us to hold the law regarding the limit of 800 yards, as fixed in the school law, as valid from the time of its enactment to January 1, 1912. In consequence of which the conviction of the petitioner was valid. On and after January 1, 1912, however, the limit of 400 yards, fixed in the crimes and punishment act (section 6510, Revised Laws of Nevada), will be the law in this respect until altered or repealed by future legislative enactment. (*State* v. *Lee*, 28 Nev. 380.)

As to the policy, wisdom, or expediency of changing the limit within which houses of ill-fame may be located from schoolhouses, it is a matter solely within the power

of the legislature, and when validly enacted is not subject to judicial alteration or repeal. (*Riter* v. *Douglass*, 32 Nev. 400.)

For the foregoing reasons, the application of the petitioner for the writ is denied, and he is forthwith remanded to the custody of the sheriff of Washoe County until the judgment under which he was convicted is satisfied.

It is so ordered.