[No. 2048]

STATE OF NEVADA, EX REL. JACOB EGGERS, STATE CONTROLLER, PETITIONER, *v.* E. P. ESSER, GEORGE KITZMEYER, AND JOSEPH ROCHON, AS COUNTY COMMISSIONERS, AND EDWARD O. PATTERSON, AS COUNTY CLERK AND TREASURER, OF ORMSBY COUNTY, NEVADA, RESPONDENTS.

1. STATUTES—TITLES—SUBJECT-MATTER.
    Stats. 1911, c. 133, entitled "An act concerning public schools," section 135 of which provided for a tax for the support of the public schools, was not void for embracing a subject not included in the title, contrary to Const. art. 4, sec. 17; Rev. Laws, 275.

2. STATUTES—CONSTRUCTION—IN PARI MATERIA.
    Statutes which relate to the same subject-matter are *in pari materia* and should be construed together.

3. STATUTES—CONFLICT—REPEAL.
    If two statutes are irreconcilably conflicting, the last enacted controls.

4. SCHOOLS AND SCHOOL DISTRICTS—TAXATION—STATUTES—IMPLIED REPEAL.
    The act of March 18, 1911 (Stats. 1911, c. 90, sec. 1), Rev. Laws, 3617, imposing a tax of 6 cents on the $100 for the general school fund, was impliedly repealed by the act of March 20, 1911 (Stats. 1911, c. 133, sec. 135), Rev. Laws, 3374, imposing a tax of 10 cents on the $100 for school purposes; the statutes being irreconcilably in conflict.

5. TAXATION—UNIFORMITY.
    Stats. 1911, c. 133, sec. 135, Rev. Laws, 3374, imposing a tax on all taxable property in the state for school purposes, and requiring the county commissioners to add such amount to the other taxes, could take effect during the fiscal year 1911, without violating the constitutional requirement of equality and uniformity, though it resulted in two different levies during the same fiscal year..

ORIGINAL PROCEEDING for a writ of *mandamus* by the State, on the relation of J. Eggers, as State Controller, against E. P. Esser and others, as County Commissioners, and E. O. Patterson, as County Treasurer, of Ormsby County. **Writ issued.**

The facts sufficiently appear in the opinion.

*Geo. B. Thatcher,* Attorney-General, and *Edward T. Patrick,* Deputy Attorney-General, for Petitioner:

Section 135 of the public school act is constitutional. The insertion of a section providing a means for procuring revenue for the support and maintenance of public schools is "germane to the subject." (Cooley, Const. Lim. pp. 208, 209; *State* v. *Ah Sam,* 15 Nev. 27; *Klein* v. *Klein,* 16 Nev. 194.)

It is manifest that the legislature, by providing one act for state school tax of six cents, and a later act for ten cents, intended to repeal the first provision, and such intention should be "carried out, no matter how awkwardly expressed or indicated." (*Thorpe* v. *Schooling,* 7 Nev. 15.)

The petitioner possibly does not grasp the reasoning in regard to this not being a retrospective statute embraced in the last three pages of the respondent's brief, but it appears to petitioner that this question is not involved herein. It will be observed that the language levying these respective taxes is practically identical.

If the first act levied a tax, the second certainly did. The question then arises when this tax was levied, and in addition to the provision of Rev. Laws, 4127, that "every law shall take effect and be in force from and after its passage, unless such law shall prescribe a different time," we have for information on the subject the provisions of Rev. Laws, 3619.

The county commissioners certainly could not levy the state tax upon the taxable property of their county until the rate was fixed by the legislature, for it has been decided that "the levy of state taxes by the board of county commissioners, though provided for in the revenue law, is an idle ceremony, for the reason that the levy is made by the legislature." (*State* v. *Manhattan S. M. Co.* 4 Nev. 318.)

In petitioner's opinion the legislature fixed the state tax levy by act approved March 18, 1911, at sixty cents, of which six cents was for the school fund, and afterwards, for reasons with which the judicial department has no concern, the rate of the state tax levy for that

year was fixed at sixty-four cents by the act approved March 20, 1911, of which ten cents was for the school fund.

In the opinion of petitioner all the questions raised by respondent have been settled adversely to his contention in the case of *Ex Parte Ah Pah,* 34 Nev. 283.

*George L. Sanford,* for Respondents:

The only question is: Was this act providing for a sixty-cent rate and a six-cents apportionment to the school fund repealed or modified by "An act concerning public schools, and repealing certain acts relating thereto," approved March 20, 1911, and particularly section 135 of said act? It (sec. 135) is unconstitutional, as the subject-matter is not properly embraced in the title of the act. The subject of levying and collecting a tax for school purposes is not expressed in the title of the act, as required by section 17, article 4, of the constitution of Nevada.

The rate of taxation in Nevada and the public schools of Nevada certainly do not form one subject; they cannot be logically coupled or combined as attempted in section 135 of the act in question. (*State* v. *Silver,* 9 Nev. 227; Cooley, Const. Lim. 7th ed. 211.)

Is section 135 of the school act sufficient to repeal by implication the act relating to taxes of March 18, 1911? The rule is well established that repeals by implication are not favored. However, a new statute revising the whole subject-matter of a former law repeals it, though containing no express words to that effect. Clearly this case does not come within this established rule. (*Thorpe* v. *Schooling,* 7 Nev. 15; *State* v. *Rogers,* 10 Nev. 319; *Estate of Walley,* 11 Nev. 260; *State* v. *Donnelly,* 20 Nev. 214.)

Unless otherwise provided statutes are prospective and not retrospective. They are effective from the day of their approval.

We concede that the legislature had the right to make the act in question retrospective; the fact is it did not do so. There is no language used in the act evincing any

such intent. It is apparent on the face of the statute that it was intended to apply to the future, not the past. (*Chew Heong* v. *U. S.*, 112 U. S. 536; *Murray* v. *Dew*, 24 How. 242; *Solm* v. *Watterson*, 17 Wall. 596; *In re Twenty Per Cent Cases*, 20 Wall. 179; *Dash* v. *Van Kluck*, 7 Johns. 477; *Sanford* v. *Bennett*, 24 N. Y. 20; *Dodge* v. *Nevada National Bank*, 109 Fed. 726; *Hunter* v. *Savage M. Co.*, 4 Nev. 153; *State* v. *Manhattan-Verde Co.*, 32 Nev. 474; *Milliken* v. *Sloat*, 1 Nev. 573.)

Clearly this act is not retrospective in operation; it is prospective. Consequently, if section 135 of the school tax law fixed the rate at ten cents for school purposes from March 20, 1911, what was the rate for the year 1911 prior to that time? There would be two rates for the year 1911, one of sixty cents up to and including March 20, 1911, and subsequent to that a rate of sixty-four cents on the $100.

In conclusion we submit that the act of March 18, 1911, providing for a general tax levy fixed the rate for that year at sixty cents on the $100 and the property throughout the state became impressed with a lien for the payment of the same immediately (*Dodge* v. *Nevada Bank*, 109 Fed. 726); that the act of March 20, 1911, concerning public schools and particularly section 135 did not directly or indirectly nor by implication repeal the provisions of said act; that conceding said section 135 is constitutional it is prospective in effect and as the tax rate for the year had been determined and fixed and all property became impressed with a lien therefor as provided by law, the provisions of the act are in abeyance so far as the tax rate is concerned for the year 1911.

By the Court, NORCROSS, J.:

This is an original proceeding in *mandamus* to require respondents, commissioners, at the time of the making of the next annual tax levy for said county of Ormsby, to levy an additional tax, sufficient to raise therefrom the sum of $547.54 due from said Ormsby County to the State of Nevada, and that, when said sum has been so realized

from such levy, that respondent treasurer be commanded to pay the same over to petitioner as required by law. The question involved in this case is, What was the legal state levy of taxes for state general school purposes for the year 1911?

An act entitled "An act to fix the state tax levy, and to distribute the same in the proper funds," which became a law, by approval of the governor, March 18, 1911, reads:

"SECTION 1.  For the fiscal year commencing January first, nineteen hundred and eleven, and annually thereafter, an ad valorem tax of sixty cents on each one hundred dollars of taxable property is hereby levied and directed to be collected for state purposes, upon all taxable property in the state, including net proceeds of mines and mining claims, except such property as is by law exempted from taxation:  General fund, thirty-nine and six-tenths cents; state interest and sinking fund, three cents; territorial interest fund, three cents; general school fund, six cents; contingent university fund, five cents; contingent university fund, 1905, No. one, one-tenth of one cent; contingent university fund, 1905, No. two, three-tenths of one cent; state prison interest and sinking fund, three cents." (Stats 1911, p. 106; Rev. Laws, 3617.)

Section 135 of an act entitled "An act concerning public schools, and repealing certain acts relating thereto," which became a law, by the approval of the governor, March 20, 1911, provides:

"SEC. 135.  An ad valorem tax of ten cents on the hundred dollars of all taxable property in the state is hereby levied and directed to be collected and paid in the same manner as other state taxes are required to be paid; and said tax shall be known as the state school tax, and the board of county commissioners of the several counties shall, annually, at the same time other state taxes are levied, add this to the other taxes provided by law to be levied and collected, and it shall be annually collected at the same time and in the same manner as other state taxes are collected, and if, from any reason whatever, in

any year said taxes are not levied as herein required, by the board of county commissioners, the county auditor shall enter them on the assessment roll, as required by law for other taxes." (Stats. 1911, p. 220; Rev. Laws, 3374.)

Sections 134 to 152½, incl., of the act last mentioned (Rev. Laws, 3373–3392) constitute chapter 10 of the act entitled "school funds," and deal with the whole subject of school funds.

Section 2 of article 9 of the state constitution, dealing with the subject of "finance and state debt," provides:

"SEC. 2. The legislature shall provide by law for an annual tax sufficient to defray the estimated expenses of the state for each fiscal year; and whenever the expenses of any year shall exceed the income, the legislature shall provide for levying a tax sufficient with other sources of income, to pay the deficiency, as well as the estimated expenses of such ensuing year or two years." (Rev. Laws, 349.)

Section 6 of article 11 of the state constitution, dealing with the subject of education, provides:

"SEC. 6. The legislature shall provide a special tax, which shall not exceed two mills on the dollar of all taxable property in the state, in addition to the other means provided for the support and maintenance of said university and common schools." (Rev. Laws, 358.)

The statement, which we presume is correct, is made in the opening brief of counsel for respondents that for the fiscal year 1911 "the counties of Churchill, Douglas, Elko, Eureka, Humboldt, Nye, Storey, Washoe, and Ormsby, levied and collected at the rate of sixty cents on the $100; the state superintendent of schools some time subsequently called attention to the act concerning public schools, and particularly section 135 thereof, and the following counties levied the rate of sixty-four cents, thereby increasing the school tax to ten cents: Clark, Esmeralda, Lander, Lincoln, Lyon, Mineral, and White Pine Counties." This is a test suit to determine the liability of the first-named counties to levy and

collect the four cents difference in the school rate made by section 135 of the school law, *supra*.

The only question discussed in the briefs is, Did section 135 of the school law, *supra*, make a valid levy for general school purposes of ten cents on the $100 of taxable property for the year 1911? It is the contention of counsel for respondents that it did not, for two reasons: First, that section 135 is unconstitutional and void because relating to a subject not embraced in the title of the act of which it is a part (Const. art. 4, sec. 17; Rev. Laws, 275); second, that section 135 is prospective in effect, and as the tax rate for the year had previously been determined and fixed, and all property had become impressed with a lien therefor as provided by law, its provisions are in abeyance, so far as the tax rate is concerned, for the year 1911.

[1] The contention that the section of the school act in question is violative of the constitution is clearly without merit. A provision for a tax for the support of public schools is certainly germane to an act "concerning public schools." (*Ex Parte Ah Pah*, 34 Nev. 283.) It is conceded that the six cents for the "general school fund" provided for in the act to fix the state tax levy, approved March 18, 1911, and the tax of ten cents, which shall be known as the "state school tax," mentioned in section 135 of the general school law, approved March 20, 1911, are levies for one and the same purpose.

[2] In so far as the two sections relate to the same subject-matter, they are *in pari materia* and should be construed together.

[3] In so far as there is any irreconcilable conflict between the two sections, the section which last became a law controls the provisions of the earlier enactment.

[4] The six- and the ten-cent provisions of the two sections being in conflict, the ten-cent levy for school purposes, being included in the law last to take effect, supersedes the levy made for the same purpose in the earlier enactment.

[5] There is no merit, we think, in the contention that,

because section 135 is not by its terms retrospective, it cannot be deemed to take effect during the fiscal year 1911, for the reason that there would be two different levies in force during different portions of the year, in violation of the constitutional provision requiring equality and uniformity in rates of assessment and taxation. (Rev. Laws, 352.)

There is no provision in the state constitution fixing a maximum levy beyond which the legislature may not go, as in the case of statutory provisions regulating the levy by county commissioners for county purposes. There is also no provision to the effect that, after the legislature has made one levy, it may not make another levy changing the rate fixed in the former levy. Most, if not all, of the tax levies made by the legislature have been acts which would apply to all succeeding years, unless changed by subsequent legislation. Whenever a change was made in the rate, as has occurred frequently, it could technically be said that two different state rates were in force during different portions of the year. In effect, however, this is not the case. The only difficulty that could be imagined as occurring by reason of the change in the rate would be in cases where the assessor had collected taxes upon personal property before the controlling state rate had been fixed for the year. The assessor does not usually, if ever, collect the tax on personal property when the owner has real property assessed to him, for the amount of the tax on the personal property, in such case, is made a lien on the real property, and the tax thereon is not required to be paid prior to December following. (Rev. Laws, 3619.) Of the tax collected by the assessor on personal property from owners not having real estate, but a small portion, doubtless, in practice, is collected between the date of the county levy and the 1st of April. But, conceding that the assessor may collect the state and county tax on personal property prior to a change in the state rate, such property is not immune from the collection of a further tax in case the state rate is subsequently increased. It is as much liable for the additional

tax as any other property not as yet assessed. The rule of uniformity in rate or assessment is not violated by the subsequent change in the state rate.

We are of the opinion that Ormsby County, and all other counties similarly situated, are liable to account to the state controller, for taxes for the year 1911, on a basis of a state rate of sixty-four cents upon the one hundred dollars of taxable property, as contended for by petitioner. As the legislature is now in session, it can provide that the additional tax required to be paid under the levy of 1911 may not become unnecessarily burdensome. As the money collected from this tax must be paid into the general school fund, and will become available for future expenses, that fact may be taken into consideration in fixing the levy for the present fiscal year.

No question has been raised as to the propriety of issuing the writ in the event petitioner's contention as to the law relative to the tax was sustained, and it is therefore ordered that the writ issue as prayed for.